No. 25-2899

In The United States Court Of Appeals
For The Eighth Circuit

---

Female Athletes United,

Plaintiff-Appellant,

vs.

Keith Ellison, et al.

Defendants-Appellees,

---

On Appeal From The United States District Court
for the District of Minnesota

---

**DEFENDANTS-APPELLEES' RESPONSE TO APPELLANT'S
EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

---

KEITH ELLISON
Attorney General
State of Minnesota

LIZ KRAMER (#0325089)
Solicitor General
PETER J. FARRELL (#0393071)
Deputy Solicitor General
ANNA VEIT-CARTER (#0392518)
MAURA ALLEN (#0504790)
KATHERINE BIES (#0401675)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010 (Voice)
liz.kramer@ag.state.mn.us

*Attorneys for State Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................3

BACKGROUND ....................................................................................3

I.    OVER A DECADE AGO, THE LEAGUE ADOPTED AN INCLUSIVE SPORTS POLICY...................................................................................3

II.   MINNESOTA'S INCLUSIVE POLICY BENEFITS ALL YOUTH. ..............4

III.  FAU SUES AND THE DISTRICT COURT DENIES PRELIMINARY INJUNCTIVE RELIEF. ..............................................................................5

ARGUMENT ........................................................................................6

I.    FAU HAS NOT ESTABLISHED STANDING. .........................................8

II.   FAU IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS TITLE IX CLAIMS. ...............................................................................10

    A.    Title IX's Implied Private Right of Action Does Not Encompass FAU's Disparate-Impact Claims.........................................10

    B.    FAU Is Unlikely to Succeed on Effective Accommodation or Equal Treatment Claims...................................................13

          1.   Effective Accommodation. .......................................14

          2.   Equal Treatment...................................................16

    C.    FAU's Claims Fail Because Appellees Lacked Clear Notice Under the Spending Clause.............................................17

III.  FAU HAS NOT ESTABLISHED IRREPARABLE HARM........................20

IV.  THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST DO NOT FAVOR AN INJUNCTION. ..............................................................21

V.   IN THE ALTERNATIVE, IF THE COURT GRANTS RELIEF, THE INJUNCTION SHOULD BE NO BROADER THAN NECESSARY TO PROVIDE COMPLETE RELIEF TO PLAINTIFFS AND CONDITIONED ON FAU'S FILING OF A SUFFICIENT SECURITY IN DISTRICT COURT....................................22

CONCLUSION ....................................................................................24

2

# INTRODUCTION

Minnesota's inclusive policy for school athletics has been in effect for ten years, and the FAU members who submitted declarations in this case have played softball with a transgender girl (Doe) for years, either on club teams or in high school competition. Yet FAU wants this Court to decide that Doe's participation with her high school team is now an emergency that demands extraordinary relief—an injunction pending appeal after the district court denied both FAU's motion for a preliminary injunction and this same request. FAU has failed to show the type of critical and exigent circumstances, let alone likelihood of success, that would entitle it to such relief. *See Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers).

# BACKGROUND

## I. OVER A DECADE AGO, THE LEAGUE ADOPTED AN INCLUSIVE SPORTS POLICY.

In 2015, Appellee Minnesota State High School League (League) first adopted a formal policy allowing transgender students to compete in high school athletics according to their gender identity. The League's policy "allows participation for all students consistent with their gender identity or expression . . . in athletics and fine arts." D.App. 355.[1]

---

[1] This brief cites to Defendant-Appellees' Appendix as "D.App." and Plaintiff-Appellants' Appendix as "P.App."

The League's policy is required by the Minnesota Human Rights Act (MHRA), which prohibits gender-identity discrimination in education.[2] Minn. Stat. § 363A.13. The Minnesota Attorney General has issued a formal legal opinion declaring that prohibiting students from participating in extracurricular activities consistent with their gender identity would violate the MHRA, which is binding on Minnesota schools until a court says otherwise. Minn. Op. Atty. Gen. 1035 (Feb. 20, 2025); D.App. 362-65; *see also* Minn. Stat. § 8.07 (noting binding effect).

## II. MINNESOTA'S INCLUSIVE POLICY BENEFITS ALL YOUTH.

The League's policy has been in place for nearly a decade. During that time, cisgender girls' participation in high-school athletics increased until the COVID-19 pandemic (and it has started to rise since 2022). D.App. 166-67. Transgender youth, by contrast, participate in high-school sports in Minnesota at extremely low levels (less than 1 percent of student athletes). *Id.* 218-19. Leading medical organizations

---

[2] The Minnesota Supreme Court recently held that prohibiting a transgender woman from participating in powerlifting competitions according to her gender-identity violated the public accommodations provision of the MHRA. *See Cooper v. USA Powerlifting*, A23-0373, A23-0621, _ N.W.2d __, at *3 (Minn. Oct. 22, 2025). This reasoning likely extends to the education context based on the similarities between the public accommodations provision and the education provision. *Compare* Minn. Stat. 363A.11 *with* Minn. Stat. § 363A.13. To the extent there is any doubt remaining that the MHRA prohibits FAU's requested injunction, *see. e.g.*, P.App. 768-69 n.13, the Court should certify the following question to the Minnesota Supreme Court: If the League prohibits a student from participation in extracurricular activities consistent with the student's gender identity, does this subject the League to claims for violations of the MHRA? *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997).

4

support inclusive athletic policies because sports participation provides transgender youth with a stronger sense of belonging, benefits their school performance, and improves their physical and mental health. *Id.* 162-66, 239-40.

The research on differences between transgender athletes and cisgender athletes is limited and disputed by leading experts. *Id.* 233-38. None focuses on youth sports. *Id.* 235. The available research focuses on adult athletes who transitioned post-puberty. *Id.* at 235-37.

There is medical consensus that testosterone is the biggest driver of differences in athletic performance for youth. P.App. 213-17; D.App. 212-13. Before puberty, cisgender girls and cisgender boys have the same levels of circulating testosterone. D.App. 212-17. After puberty, testosterone spikes in cisgender boys. *Id.* 212. However, puberty blockers and feminizing hormones keep circulating testosterone for pre-pubertal transgender girls at or near the same levels as pre-pubertal cisgender boys and girls. *Id.* 228-29.

## III.   FAU SUES AND THE DISTRICT COURT DENIES PRELIMINARY INJUNCTIVE RELIEF.

In May 2025, FAU brought this case on behalf of itself and three high-school softball players in Minnesota who compete against a single transgender girl. P.App. 25-30. FAU sued several entities: the League, three school districts, the Minnesota Attorney General, and two state agencies (Appellees). *Id.* 30-36. FAU claims that the League's policy violates Title IX because it creates an uneven playing field in

5

girls' sports. *Id.* 23-24. They sought a sweeping preliminary injunction that would require the League to exclude all transgender girls from all girls' sports. *Id.* 72.

The district court denied FAU's motion for a preliminary injunction. *Id.* 734-35. It concluded that three of FAU's four member-declarants[3] lacked standing, because they had not shown they were likely to compete against the transgender athlete during the 2026 season. *Id.* 760-61. But FAU had standing based on one member who was scheduled to play the transgender athlete next season. *Id.* The district court then concluded that none of the preliminary injunction factors favored relief. *Id.* 766-98.

## ARGUMENT

A request for an injunction pending appeal is governed by the same *Dataphase* factors that apply to a motion for a preliminary injunction. *Shrink Missouri Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). FAU must show (1) the likelihood of success on the merits; (2) the likelihood of irreparable injury to appellants absent an injunction; (3) the absence of any substantial harm to other interested parties if an injunction is granted; and (4) the absence of any harm to the public interest if an injunction is granted. *Id.* The most important factor is the appellant's likelihood of success on the merits. *Id.*

---

[3] The Complaint sues on behalf of three members. P.App. 25-30. But FAU submitted a declaration from a fourth member during the preliminary injunction briefing. *Id.* 415-23.

Appellate Case: 25-2899     Page: 6     Date Filed: 10/23/2025 Entry ID: 5571127

Requests for an injunction pending appeal should be granted "sparingly and only in the most critical and exigent circumstances" where, as here, a district court has already twice denied injunctive relief. *Ohio Citizens*, 479 U.S. at 1313; *see also OPAWL - Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 774 (6th Cir. 2024) (requiring "a significantly higher justification"); *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021) (emphasizing that "the bar is harder to clear"). "Such an injunction is appropriate only if 'the legal rights at issue are indisputably clear.'" *Brown v. Gilmore*, 533 U.S. 1301 (2001) (Rehnquist, J., in chambers) (quoting *Ohio Citizens*, 479 U.S. at 1313).

FAU's justification that the spring "softball season [is] fast approaching" is false and in no way warrants such extraordinary relief.[4] (Mot. 1.) FAU points to no "exigent circumstances," its members face no "certainly impending" injury, and its members' legal rights under Title IX are not "indisputably clear." And even if the Court applies the *Dataphase* factors, FAU's motion fails for the same reasons the district court denied its motion for a preliminary injunction: FAU's claims are unlikely to succeed; it has failed to show irreparable harm; and the equities and public interest decisively favor the League's inclusive sports policy.

---

[4]  If the Court thinks expedited review is necessary, the Court may order expedited merits briefing without granting the extraordinary relief of an injunction pending appeal. U.S. Ct. of App. for the Eighth Cir., *Internal Op. Proc.* § III(D).

## I.   FAU HAS NOT ESTABLISHED STANDING.

FAU relies on four members to establish associational standing. These members have not made the necessary showing that they have standing to seek prospective injunctive relief.[5]

FAU's members must make a "clear showing" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024), that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur," *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (cleaned up). Possible future injuries are insufficient. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013).

FAU's asserted injury—that cisgender girls must play against a team with one transgender girl—is not a recognized injury. Yet FAU's standing rests on its statement that Athletes 2 and 3 are "likely" to play Doe's team in a pre-season game without any explanation as to why, P.App. 401, 408, and Athlete 4's team "will potentially play against" Doe's team at a regular-season tournament, P.App. 421. (Mot. 10-11.) Even accepting that a single competition could be injury, such bare assertions fail to clearly show that these games are certainly impending or substantially likely to occur. P.App. 761.

---

[5] Where the parties have introduced factual evidence, the plaintiff must point to that evidence and "cannot rest on mere allegations." *Murthy*, 603 U.S. at 58.

Appellate Case: 25-2899     Page: 8     Date Filed: 10/23/2025 Entry ID: 5571127

FAU's claim that Athlete 1's team is "already scheduled" to play Doe's team in mid-May 2026 similarly falls short. (Mot. 10.) The regular season schedule is subject to change and this game has subsequently been rescheduled. *See* Nw. Suburban Conf., https://www.nwsconference.org (last visited Oct. 22, 2025) (using the calendar to view the varsity softball schedule). Moreover, FAU asks this Court to assume that both athletes will make their varsity teams and remain injury-free, and their coaches will play both athletes in that game. FAU's members cannot show their asserted injury of not being able to compete on a level playing field against Doe is "certainly impending." *SuperValu*, 870 F.3d at 769; *see also Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 597-98 (2024).

FAU also fails to support its broad theory that allowing Doe to compete against its members in any scheduled game is "unequal" competition. (Mot. 10.) FAU makes unsubstantiated claims that Doe is taller, longer-limbed, and pitches with greater speed, spin, and stamina, P.App. 311-14, 322, 332, 403-04, 419, but the record undercuts those claims, crediting instead her work ethic and pitch selection, and her team's strong defense, D.App. 423-25, 434-35. Thus, FAU has not met its burden to establish any member will be at a competitive disadvantage due to their sex even if they do play against Doe.

9

## II. FAU Is Not Likely to Succeed on The Merits of its Title IX Claims.[6]

Even if FAU has standing, its motion fails because its claims are unlikely to succeed on the merits for three key reasons. First, FAU asserts only disparate-impact claims, which are not available to private parties. Second, even assuming these claims are valid effective accommodation or equal treatment claims under Title IX, they fail because they are unsupported. Third, even if FAU's extraordinary interpretation of Title IX is correct, FAU's claims would still fail because Title IX was enacted under Congress's Spending Clause powers, and no Appellee had sufficient notice that the League's policy violated Title IX.

### A. Title IX's Implied Private Right of Action Does Not Encompass FAU's Disparate-Impact Claims.

FAU is unlikely to succeed on the merits because its Title IX claims are based on disparate-impact allegations. But a private plaintiff may enforce intentional discrimination claims only through a private right of action under Title IX.

A private plaintiff's Title IX claim must be based on intentional discrimination, not disparate impact. In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court held there is no private right of action to enforce disparate-impact

---

[6] Appellees maintain that FAU must meet the more rigorous standard of demonstrating that it is likely to prevail on the merits because it seeks to enjoin the implementation of a state statute, the MHRA. *Planned Parenthood of Minn. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc).

Appellate Case: 25-2899     Page: 10     Date Filed: 10/23/2025 Entry ID: 5571127

claims under Title VI of the Civil Rights Act of 1964. *Id.* at 280-81. The Court held that a private cause of action exists to enforce Section 601 of Title VI because of the rights-creating language in that section: "[n]o person . . . shall . . . be subjected to discrimination" by a recipient of federal funding. *Id.* at 288-89 (quoting 42 U.S.C. § 2000d). This rights-creating language is "completely absent" from Section 602, which authorizes federal agencies to "effectuate" rights already created by Section 601 by issuing regulations targeting disparate impacts. *Id.* at 288 (quoting 42 U.S.C. § 2000d–1). The Court concluded that because Section 601 prohibits only intentional discrimination, the private right of action to enforce Section 601 does not include a private right to enforce Section 602's disparate-impact regulations. *Id.* at 281-83, 285.

Title VI and Title IX are nearly identical and often interpreted in a similar manner. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286-88 (1998). Like Title VI, Title IX contains a provision that creates the substantive right to be free from discrimination "on the basis of sex," 20 U.S.C. § 1681, as well as a provision empowering federal agencies to "effectuate" this right through regulations, 20 U.S.C. § 1682. Reading Title IX in the manner required by *Sandoval*, Title IX also does not provide a basis for private litigants to sue federal

11

Appellate Case: 25-2899    Page: 11    Date Filed: 10/23/2025 Entry ID: 5571127

funding recipients for disparate-impact violations.[7] Many courts have reached this conclusion. P.App. 774-76 (collecting cases).

The district court correctly found FAU alleged a disparate-impact theory. P.App. 776-77. While disparate-treatment claims allege that some group is being treated less favorably "because of their sex," disparate-impact claims involve "facially neutral" practices that "in fact fall more harshly on one group than the other." *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Here, FAU challenges a gender-neutral policy that it claims disparately impacts female athletes. P.App. 62. FAU does not disclaim reliance on a disparate-impact theory.

The Court should reject FAU's attempts to dress up its allegations as intentional discrimination, whether styled as disparate-treatment or deliberate-indifference claims. (Mot. 15.) Title IX imposes liability on a school district only if the discrimination is "on the basis of sex." *Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 648 F.3d 860, 865 (8th Cir. 2011). FAU has not alleged any facts that give rise to a reasonable inference that any Appellee acted—or failed to act—"because of" plaintiffs' sex. *Id.*; *see also Poloceno v. Dallas Indep. Sch. Dist.*, 826 F. App'x 359,

---

[7] FAU asserts that "[n]o daylight exists" between the text of Title IX's athletic regulations and Title IX itself and so the regulations must be privately enforceable. (Mot. 14.) But the Supreme Court rejected this argument in *Sandoval*, explaining that only the substantive rights contained in the statute itself (i.e., a right against intentional discrimination) can be enforced through a private right of action. 532 U.S. at 291. Rights created by agency regulation cannot (i.e., a right against disparate-impact discrimination). *Id.*

Appellate Case: 25-2899     Page: 12     Date Filed: 10/23/2025 Entry ID: 5571127

362 (5th Cir. 2020). In fact, FAU alleges the opposite: in adopting the policy, the League and Appellee Schools failed to "take into consideration" whether the policy "provided equal opportunity or effectively accommodated female athletes." P.App. 50-51. That differentiates this case from the others FAU cites. (Mot. 15-16.)

FAU also incorrectly suggests that all claims grounded in Title IX's athletic regulations "necessarily sound in disparate treatment." (Mot. 16.) The disparate-treatment cases cited by FAU involved challenges to gender-conscious policies, like a school's decision to eliminate sports teams or allocate athletic opportunities "on the basis of sex." *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 97-98 (2d Cir. 2012); *see also Berndsen v. N.D. Univ. Sys.*, 7 F.4th 782, 783 (8th Cir. 2021); *Portz v. St. Cloud State Univ.*, 16 F.4th 577, 579 (8th Cir. 2021); *Neal v. Bd. of Trs. of Cal. State Univs.*, 198 F.3d 763, 773 n.8 (9th Cir. 1999). These cases, however, provide no support for FAU's assertions that a challenge to a facially neutral policy—absent any allegations of "sex-based motivation"—is necessarily an intentional discrimination claim. *Wolfe*, 648 F.3d at 865.

**B.    FAU Is Unlikely to Succeed on Effective Accommodation or Equal Treatment Claims.**

Because Title IX does not recognize disparate-impact claims, the only remaining question is whether FAU has stated traditional effective accommodation

and equal treatment claims under Title IX. As the district court correctly concluded, FAU has not stated valid effective accommodation and equal treatment claims.[8]

### 1. Effective Accommodation.

An effective accommodation claim considers whether a funding recipient's "selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes." 34 C.F.R. 106.41(c); *see also* 44 Fed. Reg. 71413 (1979) (the "Policy Interpretation") §VII.C.1; *Portz*, 16 F.4th at 580-81. Effective accommodation claims are assessed by examining three issues: "(a) 'determination of athletic interests and abilities of students'; (b) 'selection of sports offered'; and (c) 'levels of competition available including the opportunity for team competition.'" *Berndsen*, 7 F.4th at 785 (quoting Policy Interpretation, §VII.C.2(a)-(c)). The agency evaluates a school's athletic program as a whole, not one particular individual's ability to compete, or win on a given team. *Portz*, 16 F.4th at 581.

FAU's effective accommodation claim is that the League fails to effectively accommodate cisgender girls because softball is now a "mixed-sex" sport while

---

[8] FAU claims the federal government's "recent finding" that the League's policy violates Title IX shows it will likely prevail on the merits. (Mot. 16.) But these findings are not part of the record and this Court "can properly consider only the record and facts before the district court." *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 559-60 (8th Cir. 2008) (quotation omitted). In any event, Appellees intend to dispute these findings. *See* 20 U.S.C. § 1682.

14

baseball is male only. (Mot. 17.) FAU does not identify which of three effective accommodation issues it believes its effective accommodation claim fits under. *See generally* P.App. 60. Neither does FAU engage with the regulatory framework in analyzing its claim in any way. Nor could it. FAU's theory is simply not a valid effective accommodation claim.

Title IX does not mandate "female only sports teams." *See* 34 C.F.R. § 106.41(a)-(b). Mixed-sex teams are the default and the regulations *allow*—but do not require—schools to provide sex-separated teams. *Id.*; P.App. 779-80 & n.17; *see also Tenn. v. Dep't of Educ.*, 104 F.4th 577, 610-11 (6th Cir. 2024) (Title IX permits schools to organize athletic programs by gender identity). Given this framework, the district court properly concluded that Title IX "cannot reasonably be understood to say that requiring female athletes to compete against male athletes—or more specifically, a girls' team to compete against a mixed-sex team—amounts to a per se Title IX violation." P.App. 781. FAU's argument also fails to acknowledge that baseball and softball are different sports, with different rules, balls, pitching, and field size.

Additionally, Doe has not changed the participation opportunities available to FAU's members. For effective accommodation claims, the proper question is whether, on a *program-wide basis*, opportunities are "'*substantially proportionate*' in numbers 'to their respective enrollments.'" *Portz*, 16 F.4th at 581 (quoting U.S.

15

Dep't of Educ., Office for Civil Rights, Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (Jan. 16, 1996), https://perma.cc/CA38-QTLC). FAU has not alleged cisgender girls are underrepresented in school athletics.

### 2. Equal Treatment.

An equal treatment claim considers whether there are "sex-based differences" in a recipient's provision of benefits. 34 C.F.R. § 106.41(c)(2)-(10); *Portz*, 16 F.4th at 580-81. To determine whether organizations are providing equal treatment based on sex, courts consider a "laundry list" of factors: equipment, scheduling, travel, coaching and tutoring, locker rooms, training facilities, housing and dining, and publicity. 34 C.F.R. § 106.41(c)(2)-(10); *Portz*, 16 F.4th at 580; Policy Interpretation §VII.B.1. "[I]dentical benefits, opportunities, or treatment are not required, provided the overall effect of any differences is negligible." Policy Interpretation §VII.B.2.

FAU again ignores the legal framework for equal treatment claims; it fails to engage with the "laundry list" at all. The Complaint contains no factual allegations that the members' teams had inadequate equipment and supplies, less favorable scheduling, less publicity, etc., as compared to a boys' team. FAU is correct that nothing in the regulations or policy statement requires it to address every factor in the regulations (Mot. 19), but its failure to address *any* of these factors is fatal. P.App. 788-89.

## C. FAU's Claims Fail Because Appellees Lacked Clear Notice Under the Spending Clause.

FAU is also unlikely to succeed because even if the Appellees accepted federal funding under Title IX, they lacked clear notice that Title IX requires the exclusion of transgender girls from girls' sports. The district court agreed that the Spending Clause's clear-notice requirement applied to FAU's request for injunctive relief. P.App. 794. The district court, however, concluded that the record was "too thin" to determine whether injunctive relief "would impose a fiscal obligation stemming from compliance." *Id.* But this Court can affirm on any basis supported by the record. *Palavra v. I.N.S.*, 287 F.3d 690, 693 (8th Cir. 2002). And the record shows that Appellees lacked clear notice.

Congress enacted Title IX under its Spending Clause power. U.S. Const. art. I, § 8 cl. 1; *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181-82 (2005). Spending Clause legislation is like a contract: Congress may impose conditions on federal funds, but recipients must have clear notice of the conditions. *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 219-20 (2022). A federal funding recipient cannot knowingly and voluntarily accept the terms of the contract if the contract's terms are ambiguous. *Id.* The clear notice rule applies to claims for nominal damages and injunctive relief—both of which FAU seeks here. *Roe v. Critchfield*, 137 F.4th 912, 930 (9th Cir. 2025); P.App. 64-65.

17

FAU cannot establish that the Appellees had clear notice that Title IX required them to exclude transgender girls from girls' sports. Flip flopping regulatory guidance between different Presidential administrations underscores the lack of clear notice. In 2015 and 2016, the Department of Education and Department of Justice told schools that Title IX protects students from gender-identity discrimination.[9] In 2017, they repealed that guidance but did not replace it.[10] In 2021, after the Supreme Court decided *Bostock*, the Biden Administration said that Title IX prohibits gender-identity discrimination. *E.g.*, 86 Fed. Reg. 32637 (June 22, 2021). In 2025, the Trump Administration reversed course and—for the first time—staked out the unprecedented position that Title IX precludes transgender girls from playing girls' sports. Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025).

With that legal and regulatory backdrop, FAU cannot meet its burden to show Appellees had clear notice that Title IX prohibited them from allowing transgender students to play on sports teams that align with their gender identity. The Ninth Circuit recently affirmed the denial of a preliminary injunction because schools that

---

[9] Letter from James A. Ferg-Cadima, Acting Deputy Ass't for Policy, U.S. Dep't of Educ. Office of Civil Rights, to Emily Prince (Jan. 7, 2015), https://perma.cc/4V83-XVT7; Letter from Catherine E. Lhamon, Ass't Sec. for Civil Rights, U.S. Dep't of Educ. and Vanita Gupta, Principal Dep. Ass't Attorney for Civil Rights, U.S. Dep't of Justice (May 13, 2016), https://perma.cc/DY88-D8FY.

[10] Letter from Sandra Battle, Acting Ass't Sec. for Civil Rights, U.S. Dep of Educ. and T.E. Wheeler, II, Acting Ass't Attorney General for Civil Rights, U.S. Dep't of Justice (Feb. 22, 2017), https://perma.cc/9565-H5XS

18

*exclude* transgender girls from girls' sports did not have clear notice about what Title IX requires when it comes to transgender students. *Roe*, 137 F.4th at 928-31. That reasoning applies with equal force to schools who *include* transgender girls in girls' sports.

FAU's contrary arguments are not persuasive. They argue the Spending Clause's clear-notice requirement does not apply to claims for prospective relief. (Mot. 20.) But "[t]his argument overlooks that the Supreme Court applied the clear-notice rule in *Pennhurst*, a case involving injunctive relief." *Roe*, 137 F.4th at 930 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17-18 (1981)). It also overlooks that the Supreme Court has applied the clear-notice rule in other cases involving injunctive relief. P.App. 792-93 (citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)).

With respect to the district court's assessment that the record about the cost of injunctive relief was too thin, P.App. 794, the district court was mistaken. The clear-notice rule is not limited to cases where injunctive relief would impose a fiscal obligation. *Roe*, 137 F.4th at 928-31. Regardless, the only relevant expert evidence in the record—and common sense—establish that FAU's injunction would impose substantial compliance costs on Minnesota entities and schools to conduct confirmatory sex testing. D.App. 232, 500-01.

Appellate Case: 25-2899     Page: 19     Date Filed: 10/23/2025 Entry ID: 5571127

### III. FAU HAS NOT ESTABLISHED IRREPARABLE HARM.

FAU has failed to demonstrate irreparable harm. *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024). To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1017 (8th Cir. 2023) (quotation omitted). The mere possibility of harm is insufficient; the asserted harm must be likely to occur without an injunction. *Id.*

There is nothing in the record to suggest that FAU's members will be unable to compete for their high schools. *See D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1003 (8th Cir. 2019) ("Students who are denied the opportunity to join their schools' sports teams because of their sex may suffer irreparable harm."). Doe attends a different school than the members, therefore her participation has no bearing on whether FAU's members will be able to play softball for their schools. FAU's own authorities show why its members have not suffered irreparable harm. In those cases, the school either eliminated an athletics team (*Portz*) or scheduled the team's season so it could not participate in regional or state championships (*McCormick*). (Mot. 21-22.) Neither of those situations is present here. *See Doe v. Blake Sch.*, 310 F. Supp. 3d 969, 983 (D. Minn. 2018) (finding no

irreparable harm in Title IX case because suspended student could complete high school).

FAU asserts irreparable harm because its members *may* lose to Doe, which in turn may impact their ability to reach the state championship or attract college scholarships. But the potential outcome of games several months away, which may not even take place, is simply too speculative to establish irreparable harm. *Morehouse*, 78 F.4th at 1017; *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023). As the district court noted, "FAU has not shown that Doe's 2026 participation is likely to deprive any FAU member of a roster spot, an honor or award, recognition, a scholarship, or any other similar benefit." P.App. 797. Thus, a preliminary injunction is not warranted.

## IV. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST DO NOT FAVOR AN INJUNCTION.

The third and fourth factors—balance of harms and public interest—also weigh against granting extraordinary relief. *Morehouse*, 78 F.4th at 1018. When applying the balance-of-harms factor, "the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1347 (8th Cir. 2024). The purpose is "to balance the equities as the litigation moves forward." *Id.* (quotation omitted).

Here, these factors weigh against an injunction. The harm to FAU's members is negligible at best. There is no question that FAU's members will be able to play softball next season; the only question is the extent of their success, which is only speculatively tied to Doe's participation. Doe, however, will suffer significant harm because the injunction would prohibit her from playing a sport she loves during her final year of eligibility. *See also S.J.W. ex rel. Wilson*, 696 F.3d 771, 779 (8th Cir. 2012) (noting the interests of non-party "students" are "important"). Moreover, since Doe is not eligible for college scholarships because of the NCAA's rules prohibiting participation by transgender athletes, there is no risk that her participation would negatively impact FAU members' chances of securing one themselves.

The proposed injunction would harm State Appellees by impairing their ability to enforce the MHRA. The public interest is served by maintaining the ability to enforce state laws. *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022).

The equities and public interest clearly weigh against an injunction.

V. **IN THE ALTERNATIVE, IF THE COURT GRANTS RELIEF, THE INJUNCTION SHOULD BE NO BROADER THAN NECESSARY TO PROVIDE COMPLETE RELIEF TO PLAINTIFFS AND CONDITIONED ON FAU'S FILING OF A SUFFICIENT SECURITY IN DISTRICT COURT.**

FAU asks this Court to issue an injunction barring "Defendants from allowing males to compete with, or against, FAU's members in female-designated sports that qualify as contact sports or involve competitive skill." (Mot. 23.) However, equitable

relief should not be "more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (quotation omitted). In fashioning the requested injunction, "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act" but whether it "will offer complete relief *to the plaintiffs before the court*." *Id.* The injunction also "must be tailored to remedy specific harm shown." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982).

The requested injunction goes beyond what is necessary to provide complete relief to FAU. FAU has only alleged that four athletes will be harmed if they play against Doe's team this softball season. Thus, if the Court is inclined to grant injunctive relief, it should be limited to specifically identified games between the four FAU members and Doe.

Moreover, it should condition that relief on FAU providing sufficient security for Appellees to carry out the unprecedented relief requested. Fed. R. App. P. 8(a)(2)(E). If FAU obtains a broad injunction that is later overturned, the League will have to take extensive steps to change its policy and identify transgender athletes to implement the injunction. In addition, an unknown number of transgender athletes will be denied the opportunity to participate in sports (with all the benefits that flow from that participation). Security of at least $10,000,000 is appropriate, as it is based on the only relevant expert testimony in the record: confirmatory sex testing of

23

athletes costs at least $100 per student, D.App. 232, and there are about 100,000 female high school athletes participating in Minnesota, D.App. 167.

FAU's argument to the contrary is based on its rejected expert and conveys a lack of understanding of Minnesota school sports. FAU asserts that its "requested relief imposes no meaningful costs" (Mot. 23), but the only support it offers for that assertion is its citation to its expert report (Mot. 20) that the district court rejected as untimely (P.App. 748 n.9). And its rejected expert cited to a form[11] that is merely offered as a tool for school districts, not one that the districts are required to use.

## CONCLUSION

The Court should deny FAU's motion for an injunction pending its appeal of the district court's denial of the same.

[*Signatures on the following page*]

---

[11] https://perma.cc/ZQS3-EJKE

24

Dated: October 23, 2025                    Respectfully submitted,

KEITH ELLISON                              /s/ Christopher R. Deubert
Attorney General                           Christopher R. Deubert, pro hac vice
State of Minnesota                         cdeubert@constangy.com
                                           CONSTANGY, BROOKS,
/s/ Liz Kramer                             SMITH & PROPHETE LLP
LIZ KRAMER (#0325089)                      800 Boylston St. Suite 1005
Solicitor General                          Boston, MA 02199
PETER J. FARRELL (#0393071)                Telephone: 617.849.7880
Deputy Solicitor General

ANNA VEIT-CARTER (#0392518)                Jason D. Friedman (ID #0399808)
MAURA ALLEN (#0504790)                     jfriedman@constangy.com
KATHERINE BIES (#0401675)                  CONSTANGY, BROOKS,
Assistant Attorneys General                SMITH & PROPHETE LLP
                                           12500 Fair Lakes Circle, Suite 300
445 Minnesota Street, Suite 600            Fairfax, VA 22033
St. Paul, Minnesota 55101-2131             Telephone: 571.522.6116
(651) 757-1010 (Voice)
liz.kramer@ag.state.mn.us                  *Counsel for Defendant Independent*
                                           *School District No. 279 School Board*
*Counsel for State Defendants-Appellees*

RATWIK, ROSZAK & MALONEY, P.A.             LAW OFFICE OF KEVIN M. BECK

By: /s/ Timothy A. Sullivan               /s/ Kevin M. Beck
Timothy A. Sullivan (#391526)             Kevin M. Beck (#389072)
Christian R. Shafer (#387947)             kbeck@kmbecklaw.com
Lauren T. Kingsbeck (#403637)             Kristina J. Borgen (#392096)
Ratwik, Roszak, & Maloney, P.A.           kristina@kmbecklaw.com
444 Cedar St., Suite 2100                 2038 Ford Parkway #432
Saint Paul, MN 55101                      Saint Paul, MN 55116
(612) 339-0060                            (p) 612.743.2618
crs@ratwiklaw.com
tas@ratwiklaw.com                         *Counsel for Defendant Martens*
ltk@ratwiklaw.com

*Counsel for Independent School District*
*192, Farmington Area Public Schools*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P 27(d)(2)(A), I certify the following: This Response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,127 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

This Response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this Response has been prepared in a proportionally-spaced typeface using Microsoft Word for 365 in 14-point Times New Roman font.

This Brief complies with the electronic filing requirements of Local Rule 28A(h) because the Response has been scanned for viruses and is virus-free.

s/ Liz Kramer
LIZ KRAMER
Solicitor General

Appellate Case: 25-2899    Page: 26    Date Filed: 10/23/2025 Entry ID: 5571127

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Liz Kramer
LIZ KRAMER
Solicitor General

|#6199277-v3