No. 25-2899

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

FEMALE ATHLETES UNITED,

*Plaintiff-Appellant*,

v.

KEITH ELLISON, et al.

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Minnesota
Case No. 0:25-cv-02151-ECT-DLM

# RESPONSE IN OPPOSITION TO MOTION TO STAY AND HOLD APPEAL IN ABEYANCE

John J. Bursch
Suzanne E. Beecher
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegal.org
sbeecher@adflegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org
hframpton@adflegal.org

Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
rgray@adflegal.org

Renee K. Carlson
Douglas G. Wardlow
TRUE NORTH LEGAL
525 Park Street, Suite 460
St. Paul, MN 55103
(612) 789-8811
rcarlson@truenorthlegalmn.org
dwardlow@truenorthlegal.org

*Counsel for Plaintiff-Appellant*

# INTRODUCTION

Defendants' stay motion tries to defeat Female Athletes United's ("FAU") Title IX case by mooting it. FAU seeks a preliminary injunction protecting its female members from having to play high-school softball against a male athlete this spring. For some FAU members, this is their last season. They need relief before the season begins in early March. But Defendants ask to stay this appeal pending two Supreme Court decisions that aren't likely to issue until the 2026 softball season is over. That's improper. Stays make sense when they prevent substantial harm to one side without unduly prejudicing the other—not when they short-circuit a properly filed appeal and inflict *further* irreparable harm on female athletes who already suffered crushing defeats, depressed records, lost opportunities, and reduced publicity last season.

What's more, the two Supreme Court cases—*West Virginia v. B.P.J.*, No. 24-43, and *Little v. Hecox*, No. 24-38—aren't likely to decide this appeal. *B.P.J.* and *Hecox* ask whether Title IX and the Equal Protection Clause *allow* states to protect female athletes by designating sports by sex. This case is about whether Title IX *requires* a state to give female athletes equal opportunity by protecting the female category after the state provides nominally sex-designated sports. That question isn't before the Supreme Court. And a ruling that states *may* protect women's sports will not mean that Minnesota *must*.

1

This Court should deny Defendants' request because a stay would effectively moot FAU's appeal without substantially clarifying the legal issues involved. And a stay would subject FAU's members to another season of unfair strikeouts, lost games, diminished post-season opportunities, and uneven competition. Justice delayed is justice denied.

## BACKGROUND

FAU sued on behalf of members harmed by Minnesota's policy of allowing males to compete on girls' softball teams. Doc. 1. During the spring 2025 season, a male pitcher dominated girls' softball, racking up strikeout after strikeout and ultimately throwing "every pitch of every inning of every game" in the 2025 state tournament. Doc. 8–3 ¶¶ 39–40; Doc. 114 ¶ 29. FAU members lost multiple regular-season and post-season games in which this athlete pitched. Doc. 134 at 12, 15. Losing to the male athlete's team prevented one member's team from advancing to the sectional finals; another's team lost in the single-elimination state tournament. Doc. 113 ¶¶ 23–29; Doc. 116 ¶¶ 17–24.

FAU moved for a preliminary injunction to stop history from repeating itself in the 2026 season—the last high-school season for some FAU members. Docs. 6–9. On September 19, 2025, the district court denied FAU's motion (Doc. 134), and FAU immediately appealed (Doc. 136). On October 6, 2025, FAU filed an emergency motion for injunction pending appeal (Entry ID 5564959) to prevent imminent harm.

2

The 2026 softball season begins in early spring. Practices begin on March 9, and regular-season games on March 19. *Softball, Girls*, Minnesota State High School League, perma.cc/5U5Y-ZFM2. The season ends with the state championship on June 5, 2026. *Id.*

Meanwhile, the Supreme Court will likely hear arguments in *B.P.J.* and *Hecox* in January 2026.[1] These cases are two of the highest profile of the term: they appear on multiple lists of the Supreme Court's most important upcoming decisions. Amy Howe, *The most important cases of the next term*, SCOTUSblog (Jul. 28, 2025), perma.cc/3MQ5-4Z49; *2025-2026 Term*, Oyez, perma.cc/FJX8-TKTZ; *The People's Guide to the U.S. Supreme Court: 2025-2026*, Democracy Forward, perma.cc/ZE59-8D2N. As with other major cases, a late June or early July decision is likely. Lee Epstein, et al., *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 1002 (2015). And given the average gap of 100+ days between oral argument and opinion, a decision before the end of softball season is unlikely. Jake S. Truscott & Adam Feldman, *Final Stat Pack for the 2024-25 term* 18, SCOTUSblog (updated June 27, 2025), perma.cc/ZB3S-53M7. So receiving a Supreme Court decision in time for this Court to rule on FAU's preliminary-injunction before the softball season ends—much less before it begins—is effectively impossible.

---

[1] The cases are not yet set for argument. But counsel represent that the Clerk has conveyed that a January 2026 argument date is likely.

# ARGUMENT

The Supreme Court has recognized the "absolute duty of judges to hear and decide cases within their jurisdiction[.]" *United States v. Will*, 449 U.S. 200, 215 (1980). "[W]hen a federal court has jurisdiction, it also has a virtually unflagging obligation to exercise that authority." *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (citation modified); *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants."). Stays pending another decision are "rare." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The requesting party must "make out a clear case of hardship or inequity in being required to go forward." *Id.*

Courts in the Eighth Circuit have applied the factors used by the Ninth Circuit to decide whether to grant a stay: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995) (citation omitted); *Aldridge v. City of St. Louis*, No. 4:18-CV-1677 CAS,

2020 WL 223928, at *4 (E.D. Mo. Jan. 15, 2020) (citing *Keating*); *accord Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013) (finding that a stay must "properly balance the rights of the parties and serves the interests of judicial economy."). Each factor weighs against a stay.

### A. FAU has a critical interest in expeditious resolution and would suffer significant prejudice by delay.

FAU sought emergency injunctive relief because softball season is fast approaching, and its members will suffer imminent and irreparable injury without quick action. Staying the case pending *B.P.J.* and *Hecox* will preclude FAU from obtaining relief in time for the upcoming season. So FAU members will lose Title IX's guarantees of equal athletic opportunity and equal treatment for yet another season—the final high-school season for some.

Allowing this delay will perpetuate harm to FAU by denying its members their rights to fair and safe competition—rights enjoyed by male athletes in Minnesota. Multiple FAU members plan to return to their varsity girls' softball teams for the spring 2026 season. Doc. 113 ¶¶ 30−31; Doc. 114 ¶ 5; Doc. 115 ¶¶ 5−6; Doc. 116 ¶ 10. There's already a scheduled game between FAU Athlete 1's team and the male athlete's mixed-sex team in late April. Nw. Suburban Conf., Girls Varsity Softball 2026 Schedule, perma.cc/4JSD-RP3C. And Athlete 1's team will also have to compete with the mixed-sex team for their section's one spot in the state tournament. Doc. 113 ¶ 32. Other FAU members are

also likely to face the mixed-sex team. Doc. 114 ¶¶ 9, 14−15; Doc. 115 ¶ 9; Doc. 116 ¶¶ 43−44. And granting a stay will likely delay the case until FAU's claim for injunctive relief becomes moot on the completion of the male athlete's last softball season.

### B. Defendants will not suffer prejudice by allowing the case to proceed.

Denying a stay and expeditiously considering FAU's request for relief advances justice for both parties. As recipients of federal funding, Defendants must implement Title IX. So clarifying FAU's likelihood of success will allow Defendants to ensure that they follow federal law and give them time to make any necessary adjustments before next season.

What's more, *B.P.J.* and *Hecox* are unlikely to provide substantial guidance here. Those cases ask whether states *may* protect their female athletes under Title IX and the Equal Protection Clause. In contrast, the Minnesota State High School League's bylaws require allowing males who identify as female to play women's sports. Doc. 67 at 7. So it's improbable that any decision in *B.P.J.* or *Hecox* will resolve this case's question: whether Title IX *requires* states that establish sex-designated teams to protect their female athletes as a condition of receiving funding.

The decisions in *B.P.J.* and *Hecox* won't change the League's policies, nor are they likely to address whether those policies are lawful. So a stay will not "in all likelihood … settle" the legal issue in this

appeal. *Landis*, 299 U.S. at 256. But what it will do is cause significant delay and further injury to FAU's members with no offsetting benefits.

Further, the cases Defendants cite are off-point. Consider *Soule*. There, the plaintiffs have long graduated from high school, and the case centers on whether to correct the records of their losses to male athletes. *Soule v. Conn. Ass'n of Schs.*, Case No. 3:20-cv-00201-RNC (D. Conn. Aug. 28, 2025), Doc. 324. Their injuries are complete. By contrast here, FAU's members are *currently* competing in high-school sports, and FAU requests a preliminary injunction to ensure they have equal opportunity to compete and win *now*, and make a college team and earn a scholarship in the coming months.

Next take *Tirrell*, which involves a challenge to a state law like West Virginia's and Idaho's laws. The question there is the same as in *B.P.J.* and *Hecox*: whether states *may* protect female athletes. *Tirrell v. Edelblut*, Case No. 1:24-cv-00251-LM-TSM (D.N.H. Aug. 14, 2025), Doc. 139. Since those cases will likely resolve *Tirrell* fully, a stay makes sense. But here, a delay will increase an ongoing injury to FAU's members without resolving the legal questions at issue.

Ultimately, denying a stay and resolving this appeal benefits everyone. Doing so will give everyone notice of what the law requires before the end of this softball season and, if FAU is correct in its view of merits, ensure that FAU's members do not suffer harm while this appeal is pending.

7

### C. Judicial economy does not favor a stay.

This case presents a claim of an ongoing violation of the rights of FAU members under federal law, and FAU needs preliminary relief to prevent further harm while this case is pending. A stay will not preserve the Court's resources to more efficiently decide the appeal; instead, it will most likely moot the appeal. So there's no legitimate gain to judicial economy by granting a stay.

### D. Denying a stay serves the public interest.

The integrity of women's sports is of great public importance, not only for its legal significance, but for the practical implications for women and girls in Minnesota and across the country. Allowing the case to move forward will benefit not only FAU and its members but female athletes, coaches, schools, and sports authorities across the country, all of whom need guidance on what Title IX's guarantee of equal opportunity means for women's sports. ICONS.Amicus.Br.7–12 (Amicus Brief of Independent Counsel on Women's Sports supporting Plaintiff); States.Amicus.Br.2–3 (Brief of 19 states, including five states in the Eighth Circuit).

Meanwhile, women and girls are being denied fair and safe competition in Minnesota and states across the country. The first case of this type—arguing for Title IX's guarantees of safe and fair competition for female athletes—was filed in 2020. *Soule v. Conn. Ass'n of Schs.*, 755 F. Supp. 3d 172 (D. Conn. 2024). Five years later, the

parties have yet to receive a final judgment, and the plaintiffs have graduated high school, after being deprived of a fair opportunity to excel and achieve critical victories during this formative time in their athletic careers. *Id.* at 181–84. This Court shouldn't allow the same irreparable harm to female athletes in Minnesota. Schools and their athletes will benefit from a decision clarifying Title IX's application in this context. So denying the stay motion serves the public interest.

## CONCLUSION

None of the relevant factors support Defendants' stay motion—a motion that will have the practical effect of mooting this appeal and causing irreparable injury. The Court should deny the motion to stay the case and hold it in abeyance and rule on the motion for an injunction pending appeal without delay.

Dated: November 3, 2025

Respectfully submitted,

*s/Rory T. Gray*

John J. Bursch
Suzanne E. Beecher
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegal.org
sbeecher@adflegal.org

Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
rgray@adflegal.org

9

Jonathan A. Scruggs  
Henry W. Frampton, IV  
ALLIANCE DEFENDING FREEDOM  
15100 N. 90th Street  
Scottsdale, AZ 85260  
(480) 444-0020  
jscruggs@adflegal.org  
hframpton@adflegal.org  

Renee K. Carlson  
Douglas G. Wardlow  
TRUE NORTH LEGAL  
525 Park Street, Suite 460  
St. Paul, MN 55103  
(612) 789-8811  
rcarlson@truenorthlegalmn.org  
dwardlow@truenorthlegal.org  

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

This response complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2,052 words, excluding parts exempted by Fed. R. App. P. 32(f).

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: November 3, 2025

                                        *s/Rory T. Gray*
                                        Rory T. Gray
                                        *Counsel for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 3, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by that system.

                                    <u>*s/Rory T. Gray*</u>
                                    Rory T. Gray
                                    *Counsel for Plaintiff-Appellant*