No. 25-2899

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

FEMALE ATHLETES UNITED,

*Plaintiff-Appellant,*

v.

KEITH ELLISON, et al.

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Minnesota
Case No. 0:25-cv-02151-ECT-DLM

## MOTION TO SUPPLEMENT THE RECORD ON APPEAL

John J. Bursch
Suzanne E. Beecher
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegal.org
sbeecher@adflegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org
hframpton@adflegal.org

Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
rgray@adflegal.org

Renee K. Carlson
Douglas G. Wardlow
TRUE NORTH LEGAL
525 Park Street, Suite 460
St. Paul, MN 55103
(612) 789-8811
rcarlson@truenorthlegalmn.org
dwardlow@truenorthlegal.org

*Counsel for Plaintiff-Appellant*

Nearly two weeks after the district court denied Female Athlete United's motion for a preliminary injunction, the U.S. Departments of Education and Health and Human Services issued findings that the Minnesota State High School League (MSHSL) policy allowing males to play girls' sports violates Title IX. *Letter of Findings (Notice of Violation)*, U.S. Dep'ts of Educ. & Health & Human Servs. (Sept. 30, 2025), perma.cc/BBC6-VXN7, attached as <u>Exhibit A</u>.

The Findings show how the agencies in charge of Title IX enforcement analyze the jurisdictional and merits issues presented by this appeal. On jurisdiction, the Findings show that the enforcement agencies regard the loss of fair competition as a valid Title IX injury, contrary to the State's argument. Findings at 39–41, 44–49, 57. And on the merits, the Findings show that the enforcement agencies read the statute and regulations the same way as FAU. *E.g.*, *id.* at 8–15. So the Findings are highly relevant but were not in the record because they were unavailable at the time of the district court's decision.

Because the Findings are subject to judicial notice as public records, FAU does not believe that formally supplementing the record is necessary. But given the State's contrary argument and to be safe, FAU moves under Federal Rule of Evidence 201, <u>Federal Rule of Appellate Procedure 10(e)</u>, and the Court's inherent authority to supplement the record to include the Findings.

1

## I.    The Court has authority to supplement the record.

Three sources of authority allow the Court to supplement the record. First, Federal Rule of Evidence 201 permits the Court to take judicial notice "at any stage of the proceeding[s]" of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2) & (d).

Second, Federal Rule of Appellate Procedure 10(e)(3) gives this Court authority over any "questions as to the form and *content* of the record." Fed. R. App. P. 10(e)(3) (emphasis added).

Third, the Court has inherent authority to supplement the record "[w]hen the interests of justice demand it." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir. 1993). And it has exercised that authority to address matters related to standing and jurisdiction. *See, e.g., Ctr. for Biological Diversity v. Strommen*, 114 F.4th 939, 943 n.3 (8th Cir. 2024) (permitting party to supplement the record to bolster claim of associational standing).

What's more, the Supreme Court has specifically instructed that parties "take pains to supplement the record *in any manner necessary* to enable [federal courts] to address with as much precision as possible any question of standing that may be raised." *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (emphasis added). And following the *Pennell* directive, this Court regularly permits supplementing the record when standing is at issue. *See, e.g., Ctr. for Biological Diversity*, 114 F. 4th at

2

943 n.3; *Worth v. Jacobson*, <u>108 F.4th 677, 686</u>–87 (8th Ci<u>r. 2024)</u> <u>(supplementing the record with affidavit relevant to associational</u> standing).

Here, the Court should allow supplementing the record with the Findings because they satisfy the standard for judicial notice as well as the broader interests-of-justice standard from this Court's caselaw.

**II.     The Court should take judicial notice of the Findings.**

Federal Rule of Evidence 201 permits the Court to take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." <u>Fed. R. Evid.</u> <u>201(b)(2)</u>. Public records satisfy that standard—particularly those that provide a federal agency's policies and positions. *United States v. Eagleboy*, <u>200 F.3d 1137, 1140</u> (8th Ci<u>r. 1999</u>) (taking judicial notice of Department of Interior policy statement); *accord United States v. City of St. Paul*, <u>258 F.3d 750, 753</u> (8th Ci<u>r. 2001</u>) (taking judicial notice of agency handbook); *United States v. Love*, <u>20 F.4th 407, 412</u> (8th Ci<u>r.</u> <u>2021</u>) (taking judicial notice of deed conveying land to the United States).

Like the policy statements in *Eagleboy*, the Findings clarify the enforcement agencies' analysis of—and position on—the MSHSL's policy of allowing boys to compete in girls' sports. And the Findings are not reasonably subject to dispute: no one doubts that they accurately

Appellate Case: 25-2899     Page: 4     Date Filed: 12/22/2025 Entry ID: 5590931

state the agencies' position on the MSHSL policy. Thus, the Findings are like the kinds of "judicial opinions, treatises, law review articles, public records, and the like" that appellate courts routinely consider "in support of a legal theory that was raised in the trial court." *Eagleboy*, 200 F.3d at 1140. And they are unlike the letter at issue in *Ng v. Board of Regents of the University of Minnesota*, 64 F.4th 992 (8th Cir. 2023), which a single Board of Regents member wrote, and did not state the Board's official policy or position. *Id.* at 994 n.2.

Nor is there any indication that anyone disputes the operative *facts* recited in the Findings, which mainly consist of the basic statutory and regulatory structure of Minnesota high-school sports (at 22–27) and Minnesota's policy on allowing males to play girls' sports (at 27–37). What the State disputes is how Title IX applies to these facts. First Am. Compl. at ¶¶ 101, 104, 108, 110, 122, *Minnesota v. Trump*, No. 0:25-cv-01608-ECT-DLM (D. Minn. Dec. 2, 2025) (calling the Findings an "erroneous interpretation of Title IX"). So the State's invocation of *McIvor v. Credit Control Services, Inc.*, 773 F.3d 909, 914 (8th Cir. 2014), which involved disputed facts recited in another court's opinion, misses the point.

Of course, FAU does not contend that the enforcement agencies' understanding of how Title IX applies in this situation *binds* the Court. It simply suggests that "[c]areful attention to the judgment" of the enforcement agencies "may help inform" the Court's review. *Loper*

4

*Bright Enters. v. Raimondo,* <u>603 U.S. 369, 412</u>–13 (2024). Indeed, it would be "illogical" to ignore the enforcement agencies when they've issued findings on the very policy presented by this appeal. 16A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3956.4 (5th ed. 2025). So this Court should take judicial notice of the findings.

### III.  Considering the Findings serves the interests of justice.

Besides qualifying for judicial notice, supplementing the record would also serve the interests of justice for at least three reasons.

*First*, the Findings are relevant to FAU's standing because they show that the enforcement agencies regard the FAU members' injuries—losing equal athletic opportunity because a male is playing girls' softball—as the kind of injuries Title IX contemplates. Findings at 46–49 (discussing harm to female athletes). And the Findings connect that injury to the specific circumstances of this case: Minnesota girls' softball. Findings at 39–41, 57. So the Findings assist the Court in "address[ing] with as much precision as possible" the "question of standing." *Pennell*, <u>485 U.S. at 8</u>; *accord Ctr. for Biological Diversity*, <u>114 F. 4th at 943</u> n.3; *Worth*, <u>108 F.4th at 686</u>–87.

*Second*, FAU could not have included the Findings in the record below because they weren't available until after the case went on appeal. So this isn't a situation when a party had "ample opportunity" to submit a document below but "chose not to do so." *Famuyide v.*

Appellate Case: 25-2899    Page: 6    Date Filed: 12/22/2025 Entry ID: 5590931

*Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 899 (8th Cir. 2024). Instead, all parties had access to the Findings when they came out. Indeed, the Findings address the MSHSL and Minnesota Department of Education, not FAU. And Appellees cannot legitimately claim surprise or prejudice from the Court reviewing them.

*Third*, common sense suggests that a court considering how Title IX applies to the MSHSL policy would review the enforcement agencies' analysis of that very question to evaluate its persuasiveness. Unusual scenarios like this—where federal enforcement agencies issued findings shortly after the district court's decision—are precisely why the rule against enlarging the record isn't "etched in stone," and this Court will supplement the record to avoid "an incomplete picture" of the relevant circumstances. *Dakota Indus.*, 988 F.2d at 63. This avoids the "illogical" result of deciding Title IX's application without reference to the views of the very agencies charged with enforcing it, Fed. Prac. & Proc. Juris. § 3956.4, especially when those views are based on contemporaneous athletic regulations that were congressionally mandated and deserve "very great respect," *Loper Bright*, 603 U.S. at 386 (quotation omitted).

## CONCLUSION

For these reasons, the Court should supplement the record on appeal to include the Findings of the Departments of Education and Health and Human Services on the MSHSL's policy.

Appellate Case: 25-2899　　Page: 7　　Date Filed: 12/22/2025 Entry ID: 5590931

Dated: December 22, 2025

Respectfully submitted,

*s/Rory T. Gray*

John J. Bursch
Suzanne E. Beecher
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegal.org
sbeecher@adflegal.org

Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
rgray@adflegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org
hframpton@adflegal.org

Renee K. Carlson
Douglas G. Wardlow
TRUE NORTH LEGAL
525 Park Street, Suite 460
St. Paul, MN 55103
(612) 789-8811
rcarlson@truenorthlegalmn.org
dwardlow@truenorthlegal.org

*Counsel for Plaintiff-Appellant*

7

# CERTIFICATE OF COMPLIANCE

This response complies with the word limit of <u>Fed. R. App. P. 27(d)(2)(A)</u> because it contains 1,411 words, excluding parts exempted by <u>Fed. R. App. P. 32(f)</u>.

This response complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: December 22, 2025

<u>*s/Rory T. Gray*</u>
Rory T. Gray
*Counsel for Plaintiff-Appellant*

8

Appellate Case: 25-2899   Page: 9   Date Filed: 12/22/2025 Entry ID: 5590931

# CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by that system.

s/Rory T. Gray
Rory T. Gray
*Counsel for Plaintiff-Appellant*

9

Appellate Case: 25-2899     Page: 10     Date Filed: 12/22/2025 Entry ID: 5590931