No. 25-2899

In the
United States Court of Appeals
for the Eighth Circuit

FEMALE ATHLETES UNITED,

*Plaintiff-Appellant*

v.

KEITH ELLISON, in his official capacity as
Attorney General of Minnesota, et al.,

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No. 0:25-cv-02151 (ECT/DLM)

BRIEF OF APPELLEE
SCHOOL DISTRICTS [REDACTED]

[Counsel listed on the next page]

FORSGREN FISHER MCCALMONT
DEMAREA TYSVER LLP

Virginia R. McCalmont
(MN#399496)
Caitlinrose H. Fisher
(MN#0398358)
Rebecca Rogers (MN#0403827)
Capella Tower
225 South 6th Street, Suite 1500
Minneapolis, MN 55402
(612) 474-3300
vmccalmont@forsgrenfisher.com
cfisher@forsgrenfisher.com
rrogers@forsgrenfisher.com

*Counsel for Appellee Independent
School District No. 11*

RATWIK, ROSZAK & MALONEY, P.A.

Timothy A. Sullivan (MN#391526)
Christian R. Shafer (MN#387947)
Lauren T. Kingsbeck (MN#403637)
444 Cedar St., Suite 2100
Saint Paul, MN 55101
(612) 339-0060
tas@ratwiklaw.com
crs@ratwiklaw.com
ltk@ratwiklaw.com

*Counsel for Appellee Independent
School District No. 192*

CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP

Christopher R. Deubert
(MA#569124) (*pro hac vice*)
800 Boylston St. Suite 1005
Boston, MA 02199
(617) 849-7880
cdeubert@constangy.com

*Counsel for Appellee Independent
School District No. 279*

**SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT**

On September 19, 2025, the district court (the Honorable Eric J. Tostrud, presiding) denied Appellant Female Athletes United's ("FAU") request for a preliminary injunction. The district court's order was thoroughly reasoned and made assumptions in FAU's favor on essentially all disputed points. Most critically, the district court assumed that "high-school-aged transgender females possess athletic advantages over cisgender females" (App.762; Add.030; R.Doc. 134 at 30); that "'sex' as the term is used in Title IX means 'biological' sex" (App.778; Add.046; R.Doc. 134 at 46); and that FAU only had to show a *fair chance* of prevailing, not that it was *likely* to prevail (App.768; Add.036; R.Doc. 134, at 36.). But even after giving FAU the benefit of these favorable assumptions, the district court concluded that a preliminary injunction should not be issued because FAU had not carried its burden of proving any one of the *Dataphase* factors—let alone all four.

On appeal, this Court reviews the district court's denial of a motion for a preliminary injunction for abuse of discretion. FAU comes nowhere near meeting its burden of proving that the district court's carefully reasoned opinion is an abuse of its considerable discretion. The district court's denial of FAU's motion for a preliminary injunction should be affirmed.

This Court has already appropriately scheduled 20-minute arguments.

# TABLE OF CONTENTS

Summary of the Case..................................................................................................i

Table of Contents ......................................................................................................ii

Table of Authorities ................................................................................................ iv

Statement of the Issues ........................................................................................... 1

Statement of the Case.............................................................................................. 2

    A.  FAU files a preliminary injunction motion during the 2025
        softball season but seeks relief for the 2026 softball season...................... 2

    B.  The district court handles FAU's request for a preliminary
        injunction on an expedited basis............................................................. 3

    C.  FAU appeals, then files two motions for an injunction pending
        appeal, which the district court and this Court deny. .................................. 4

    D.  FAU challenges one student's participation in high school athletics........ 5

Summary of the Argument....................................................................................... 7

Argument.................................................................................................................. 8

    I.     This Court's review is for abuse of discretion. ............................................. 9

    II.    The district court did not abuse its discretion by denying FAU's
          request for preliminary injunctive relief. .....................................................11

        A.  The district court did not abuse its discretion by concluding
           that FAU failed to show irreparable harm. ..............................................12

           1.  FAU's long delay in seeking relief shows that its members
               do not face irreparable harm...................................................15

           2.  The harms FAU members allegedly face are speculative
               and unsupported by the record...........................................19

               a)  A decreased chance of winning is not irreparable harm. ...20

       b)   FAU's alleged increased risk of injury is not based in
fact or law.................................................................................................23

    B.  The district court did not abuse its discretion by concluding
that the balance of equities does not favor an injunction. ...............26

Conclusion....................................................................................................................28

Certificate of Compliance...........................................................................................31

Certificate of Service...................................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Beber v. NavSav Holdings, LLC,*
  140 F.4th 453 (8th Cir. 2025) ........................................................................ 13

*Benisek v. Lamone,*
  585 U.S. 155 (2018) ........................................................................................ 15

*Cigna Corp. v. Bricker,*
  103 F.4th 1336 (8th Cir. 2024) ...................................................................... 11

*D.M. by Bao Xiong v. Minn. State High Sch. League,*
  917 F.3d 994 (8th Cir. 2019) .....................................................................10, 11

*Dataphase Systems Inc. v. C L Systems Inc.,*
  640 F.2d 109 (8th Cir. 1981) ....................................... i, 4, 7, 10, 12, ,26, 27

*Gen. Motors Corp. v. Harry Brown's, LLC,*
  563 F.3d 312 (8th Cir. 2009) ......................................................................... 13

*Heartland Acad. Cmty. Church v. Waddle,*
  335 F.3d 684 (8th Cir. 2003) ......................................................................... 19

*Hill v. Xyquad, Inc.,*
  939 F.2d 627 (8th Cir. 1991) .....................................................................26, 27

*Home Instead, Inc. v. Florance,*
  721 F.3d 494 (8th Cir. 2013) ......................................................................... 10

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.,*
  115 F.4th 889 (8th Cir. 2024)................................1, 7, 9, 10, 13, 14, ,15, 16, 17

*Iowa Migrant Movement for Just. v. Bird,*
  157 F.4th 904 (8th Cir. 2025)..................................................................1, 12, 26

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*
  370 F.3d 275 (2nd Cir. 2004) ........................................................................ 20

*McKinney ex rel. NLRB v. S. Bakeries, LLC*,
  786 F.3d 1119 (8th Cir. 2015) ...................................................................... 16

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
  59 F.3d 80 (8th Cir. 1995) ....................................................................... 23, 25

*Morehouse Enters., LLC v. Bureau of Alcohol,*
  *Tobacco, Firearms and Explosives*
  78 F.4th 1011 (8th Cir. 2023) ...................................................................... 26

*MPAY Inc. v. Erie Custom Comput. Applic'ns, Inc.*,
  970 F.3d 1010 (8th Cir. 2020) ..................................................................... 26

*Ng v. Bd. of Regents of Univ. of Minn.*,
  64 F.4th 992 (8th Cir. 2023) ...................................................................... 1, 7

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................... 26

*Padda v. Becerra*,
  37 F.4th 1376 (8th Cir. 2022) ................................................................. 13, 25

*Phyllis Schlafly Revocable Tr. v. Cori*,
  924 F.3d 1004 (8th Cir. 2019) ..................................................................... 15

*Portz v. St. Cloud State Univ.*
  196 F.Supp.3d 963 (D. Minn. 2016) ........................................................... 20

*Powell v. Noble*,
  798 F.3d 690 (8th Cir. 2015) ......................................................................... 9

*Reprod. Health Servs. of Planned Parenthood*
  *of St. Louis Region, Inc. v. Nixon*,
  428 F.3d 1139 (8th Cir. 2005) ................................................................. 1, 21

*S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*,
  696 F.3d 771 (8th Cir. 2012) ....................................................................... 13

*Sessler v. City of Davenport*
   990 F.3d 1150 (8th Cir. 2021) .................................................................14, 22, 23, 25

*Sleep No. Corp. v. Young*,
   33 F.4th 1012 (8th Cir. 2022)...........................................................................9, 11, 12

*Wilbur-Ellis Co. v. Erikson*,
   103 F.4th 1352 (8th Cir. 2024) ................................................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ............................................................................................ 13, 21, 22

## Statutory and Constitutional Provisions

20 U.S.C. § 1681(a) .....................................................................................................20

Minn. Stat. § 363A.13.............................................................................................. 2, 28

W. Va. Code § 18-2-25d ..............................................................................................28

## STATEMENT OF THE ISSUES

1.  Did the district court abuse its discretion when it denied FAU's motion for a preliminary injunction?

    <u>Apposite authorities:</u>

    *Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904 (8th Cir. 2025)

    *Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, 115 F4th 889 (8th Cir. 2024)

    *Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992 (8th Cir. 2023)

    *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139 (8th Cir. 2005)

**STATEMENT OF THE CASE**

**A.  FAU files a preliminary injunction motion during the 2025 softball season but seeks relief for the 2026 softball season.**

FAU initiated this lawsuit and filed its complaint in May 2025. (App.022; R.Doc. 1.) The next day, FAU filed a motion for a preliminary injunction. (App.071; R.Doc. 6.) FAU's motion challenged Minnesota's longstanding laws and administrative bylaws that prohibit discrimination against transgender students. *See* Minn. Stat. § 363A.13, subd. 1; Minn. State High Sch. League [hereinafter "MSHSL"] Bylaws 300.03(A). FAU's motion specifically focused on one student who plays softball. (*See* App.091; R.Doc. 7, at 15.)

When FAU filed its motion, the 2025 softball season was underway, and Minnesota high school teams were preparing for the state tournament. FAU was aware that the state tournament was coming up and even represented in its preliminary injunction briefing that an FAU member was "likely" to "face [Doe] at the state tournament in June." (App.092; R.Doc. 7, at 16.) But FAU did not move for preliminary injunctive relief with respect to the 2025 season. Instead, FAU sought "sufficient time for briefing, a decision, and a potential appeal before the *next* softball season begins." (Aples. App. 9; R.Doc. 25, at 1 (emphasis added).)

At the hearing on FAU's preliminary injunction motion three months later, the district court seemed perplexed by FAU's strategic choice. The district court observed that, after the case was filed in May, the court "was sort of prepared to, you know, jump on this and get it moving and [get an] expedited briefing schedule and make a decision presuming that the challenge concerned the '25 season." (App.711.) That became unnecessary once FAU revealed that it was only challenging Doe's participation in the 2026 softball season. (Aples. App. 9; R.Doc. 25, at 1.)

## B. The district court handles FAU's request for a preliminary injunction on an expedited basis.

Although FAU sought injunctive relief related to a softball season that was then a full year away, FAU opposed the State Appellees'[1] request for additional time to develop the factual record or to collapse the preliminary injunction proceedings with the proceedings on the merits of FAU's claims. (*Compare*

---

[1] "State Appellees" refers to Minnesota Attorney General Keith Ellison; Commissioner of the Minnesota Commission on Civil Rights Rebecca Lucero; and Minnesota Commissioner of Education Willie Jett. FAU also named as defendants Executive Director of the Minnesota State High School League ("MSHSL") Erich Martens; Independent School District No. 11 School Board ("ISD #11"); Independent School District No. 192 School Board ("ISD #192"); and Independent School District No. 279 School Board ("ISD #279"). This brief refers to ISD #11, ISD #192, and ISD #279 collectively as the "School District Appellees." This brief refers to all parties listed in this footnote collectively as "Appellees."

*Aples.* App. 6; R.Doc. 24, at 3, *with* Aples. App. 9; R.Doc. 25, at 1.) The district court sided with FAU on the schedule and handled FAU's preliminary injunction motion on an expedited basis. On August 20, 2025, the district court held a two-hour hearing on FAU's motion. (*See* App.650–732.) Less than one month later, the district court issued a 66-page order concluding that all four of the *Dataphase* factors weighed against issuing a preliminary injunction. (*See generally* App.733; Add.001; R.Doc. 134.) The district court thus denied FAU's request for preliminary injunctive relief. (App.798; Add.066; R.Doc. 134, at 66.)

## C. FAU appeals, then files two motions for an injunction pending appeal, which the district court and this Court deny.

FAU appealed the district court's denial of its preliminary injunction motion on September 22, 2025. (*See* App.800; R.Doc. 136.) Four days later, FAU filed an "Emergency Motion for Injunction Pending Appeal" in the district court. (App.804–05; R.Doc. 140, at 1–2.) The district court denied FAU's motion three days later, explaining that "[t]he Order denying FAU's preliminary-injunction motion addressed the arguments FAU raises, and FAU identifies no persuasive reason to reverse course." (App.819–20; Add.067–068; R.Doc. 145.)

FAU could have promptly filed its opening appeal brief or sought expedited review of its appeal from this Court. It did neither. Instead, FAU filed a so-called "Emergency Motion for an Injunction Pending Appeal" in this Court,

arguing for the first time that FAU's members faced imminent, irreparable harm because the "softball season [is] fast approaching." (Entry ID 5564959, at 9.) Appellees opposed FAU's "Emergency Motion," and this Court promptly denied it, instead ordering expedited briefing and argument on FAU's appeal. (Entry ID 5571127, at 3; Entry ID 5571998, at 3; Entry ID 5575327, at 1.)

**D.    FAU challenges one student's participation in high school athletics.**

FAU's appeal seeks to preclude one Minnesota high school student from playing softball in her senior year of high school. The student, Jane Doe, is a transgender girl ███████████████████████████████████ (*See* R.Doc. 79, at ¶¶ 2–4, 7–11.) ████████████████████████████ ███████████████ (*Id.*, at ¶ 10.) ████████████████████████ ████████████████████████████████████████████████ ████████████████ (*Id.*, at ¶¶ 12–13.) ████████████████ ███████████████████████████ (*See id.*) Throughout her time as a Minnesota student, Doe has ███████████████████ (*See id.,* at ¶ 11; *see also* R.Doc. 75, at ¶ 7.) By all accounts, Doe "does not possess exceptional physical capabilities for a female athlete," but "she *is* exceptional in terms of her dedication and the hard work she puts in." (R.Doc. 75, at ¶ 8 (emphasis added).)

Doe has been a member of her high school softball team for the past four years. (*See* App.339; R.Doc. 80, at ¶ 11.) Softball is a team sport, and Doe has

been surrounded by a phenomenal team. According to the team's coach, in his ███████████████████████████ [he has] never coached a more talented, hard-working group of girls." (R.Doc. 75, at ¶ 19.) ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ (R.Doc. 76, at ¶ 16; *see also* R.Doc. 75, at ¶ 21.)

The fact that Doe's success is a product of her hard work and the collective efforts of her team is borne out by the 2025 season statistics. ████ ████████████████████████████████████████████████ (R.Doc. 75, at ¶ 15.) ████████████████████████████████████████████████ (R.Doc. 76, at ¶ 21.) Put another way, Doe was ████████████████████ ████████████████████████████████████████████████████ in 2025. (R.Doc. 75, at ¶ 11.) ████████████████████████████████ ████████████████████████████ (*Id.* at ¶ 16.) Meanwhile, ████████ ████████████████████████ (*Id.*)

The 2026 season is Doe's last opportunity to play competitive softball. (App.343; R.Doc. 80, at ¶ 29.)

**SUMMARY OF THE ARGUMENT**

FAU has not met its heavy burden of proving that the district court abused its discretion by denying FAU's motion for a preliminary injunction. Despite FAU's attempts to obfuscate and elide the standard of review, the law is clear: this Court reviews denials of preliminary injunctive relief for an abuse of discretion. *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 892 (8th Cir. 2024). A district court abuses its discretion when it ignores or erroneously weighs the relevant factors. *Ng v. Board of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023). The relevant "*Dataphase*" factors are (1) likelihood of success on the merits, (2) irreparable harm, (3) balance of harms, and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

The district court's thorough and well-reasoned opinion shows that the court properly considered and weighed all four *Dataphase* factors. Mindful of their clients' unique interests here, the undersigned School District Appellees focus on irreparable harm and the balance of equities.[2] These factors strongly favor denying preliminary injunctive relief for at least three reasons. First, FAU unreasonably delayed in filing suit and seeking preliminary injunctive relief.

---

[2] The School District Appellees also join the arguments made by other Appellees in their opposition briefs.

Second, FAU has not shown that the district court clearly erred by finding that FAU would not suffer irreparable harm absent an injunction, because the harms FAU alleges are neither cognizable nor imminent. And third, the balance of equities favor allowing a single Minnesota teenager to finish her final season of her favorite sport with her teammates and friends. To deny her this opportunity would be cruel, unnecessary, and of no benefit to FAU members, whose alleged harms are so speculative, they border on nonexistent.

Because the district court considered all relevant factors, did not consider any irrelevant factors, and made findings of fact and conclusions of law that were not erroneous, the district court did not abuse its discretion by denying FAU's motion for a preliminary injunction. *See Ng*, 64 F.4th at 997. Accordingly, the district court's order should be affirmed. *See id.*

## ARGUMENT

This brief begins by setting forth the appropriate standard of review— abuse of discretion—which FAU obfuscates in its opening brief. This brief then explains why FAU has failed show that the district court's detailed findings and thorough order constitute an abuse of its considerable discretion. The district court's preliminary injunction order should be affirmed.

## I. THIS COURT'S REVIEW IS FOR ABUSE OF DISCRETION.

This appeal arises from the district court's denial of FAU's motion for a preliminary injunction. In its opening brief, FAU asserts that this Court should review *de novo* the district court's preliminary injunction order. (Opening Br. of App., Entry ID 5579646 at 28–29 [hereinafter "App. Br."].) This blatantly misconstrues well-established law regarding the applicable standard of review. Contrary to FAU's assertion, "the district court has considerable discretion in determining whether or not a preliminary injunction should issue," and this Court's scope of review is "very limited." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (citation and quotation marks omitted). Accordingly, this Court "'review[s] a district court's denial of a preliminary injunction for an abuse of discretion.'" *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 892 (8th Cir. 2024) (quoting *Powell v. Noble*, 798 F.3d 690, 697 (8th Cir. 2015)). In applying the abuse-of-discretion standard, this Court "review[s] the district court's material factual findings for clear error[ and] its legal conclusions de novo." *Ng*, 64 F.4th at 997 (cleaned up). A district court abuses its discretion when it ignores or erroneously weighs relevant factors. *See id.*

The district court committed no error of fact or law in exercising its "considerable discretion" to deny FAU's request for preliminary injunctive relief. *Sleep No. Corp.*, 33 F.4th at 1016. A preliminary injunction is an

extraordinary remedy that is intended to "preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Wilbur-Ellis Co. v. Erikson*, 103 F.4th 1352, 1355 (8th Cir. 2024) (citation and quotation marks omitted). This Court "considers four factors when reviewing" a district court's decision on the propriety of preliminary injunctive relief: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Id.* at 1355–56 (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)). These four factors are commonly referred to as the "*Dataphase* factors" after this Court's seminal decision in *Dataphase Systems Inc. v. C L Systems Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Both before the district court and in this appeal, FAU bears the burden of establishing that the *Dataphase* factors are met and that a preliminary injunction should issue. *See Ng*, 64 F.4th at 997. FAU's burden is particularly "heavy" in this case because granting FAU's request for a preliminary injunction would "give [FAU] substantially the relief [it] would obtain after a trial on the merits." *Hotchkiss*, 115 F.4th at 893 (citation and quotation marks omitted).

Mindful of the role of the appellate courts, this Court "will not disturb a district court's discretionary decision if such decision remains within the range

of choice available to the district court." *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019) (citation and quotation marks omitted). This Court routinely notes that the district court's decision to grant or deny a preliminary injunction "is accorded deference because of its greater familiarity with the facts and the parties" *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1343 (8th Cir. 2024) (citation and quotation marks omitted).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING FAU'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF.

The district court did not abuse its "considerable discretion" by denying FAU's motion for a preliminary injunction. *Sleep No. Corp.*, 33 F.4th at 1018 (citations and quotation marks omitted).

As a starting point, granting preliminary injunctive relief would not preserve the status quo—it would fundamentally change it. *See Wilber-Ellis Co.*, 103 F.4th at 1355 ("The primary function of a preliminary injunction is to preserve the status quo." (citation and quotation marks omitted)). Doe has been a member of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for the last four years. (*See* App.339, 342; R.Doc. 80, at 3, 6.) That is the status quo. By asking this Court to enjoin ISD #11 and the other Appellees from permitting Doe to play softball, FAU seeks to flip the status quo on its head to deprive a student of her last year of high school sports eligibility. FAU's effort to *alter*

instead of "*preserve* the status quo," *Wilber-Ellis Co.*, 103 F.4th at 1355 (emphasis added) (quotation marks omitted), weighs against the issuance of preliminary injunctive relief.

Even setting that issue aside, FAU has not carried its burden of establishing that the district court's discretionary denial of preliminary injunctive relief should be reversed. The School District Appellees join the arguments made by other Appellees in opposition to FAU's appeal but focus in this brief on FAU's failure to satisfy two of the *Dataphase* factors that the School District Appellees are uniquely well-positioned to address: irreparable harm and the balance of equities.

### A. The district court did not abuse its discretion by concluding that FAU failed to show irreparable harm.

In its preliminary injunction order, the district court found that FAU failed to meet its burden of showing irreparable harm absent an injunction. (App.797; Add.065; R.Doc. 134 at 65.) This Court reviews the district court's irreparable harm finding for clear error. *See Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904, 928 (8th Cir. 2025). This "scope of review is 'very limited.'" *Id.* (quoting *Sleep No. Corp.*, 33 F.4th at 1018). There is no error—let alone a clear error—in the district court's decision that FAU did not meet its burden of

proving irreparable harm to its members if an injunction is not entered. (App.797; Add.065; R.Doc. 134 at 65.)

The district court correctly stated and applied the law applicable to the irreparable harm determination. (App.795–97; Add.063–065; R.Doc. 134 at 63–65.) "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "To demonstrate irreparable harm, the movant must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief." *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 461 (8th Cir. 2025) (citation and quotation marks omitted). A mere "possibility of irreparable harm" is not sufficient; the party seeking a preliminary injunction "must show 'that irreparable injury is *likely* in the absence of an injunction.'" *Hotchkiss*, 115 F.4th at 892 (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). Equally importantly, "[s]peculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012); *see also Padda v. Becerra*, 37 F.4th 1376, 1384–85 (8th Cir. 2022) (similar). "'[T]he failure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny

a preliminary injunction.'" *Hotchkiss*, 115 F.4th at 893 (quoting *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021)).

The district court found that FAU had not carried its burden of "show[ing] injunction-worthy irreparable harm." (App.797; Add.065; R.Doc. 134 at 65.) The district court acknowledged that "students who are denied the opportunity to participate in school-sponsored sports suffer irreparable harm." (App.796; Add.064; R.Doc. 134 at 64 (citing, *e.g., Ng*, 64 F.4th at 997).) But the district court emphasized that this rule does not apply here because "FAU's members are not at risk of losing their ability to participate." (App.796; Add.064; R.Doc. 134 at 64–65.) The district court's finding is indisputably true, and certainly not clear error. Doe does not play on the same high school softball team as any of FAU's members. (*See* App.339; R.Doc. 80, at ¶ 11; App.309; R.Doc. 48-2, at ¶ 2; App.320; R.Doc. 48-3, at ¶ 2; App.330; R.Doc. 48-3, at ¶2.) Whether Doe plays on her high school's softball team accordingly has no bearing on whether FAU's members will make their own schools' teams.

Without acknowledging this finding or the deference this Court must give to it, FAU reprises the arguments it made to the district court, asserting with little support that "FAU members face irreparable harm" because they may play Doe's team this spring. (App. Br. at 49.) This bare assertion of irreparable harm should be rejected for two reasons. First, FAU's delay in seeking relief belies its

argument that the alleged harm it faced is immediate and irreparable. This delay alone provides grounds for denying FAU's request for preliminary injunctive relief. *Hotchkiss*, 115 F.4th at 894. Second, FAU's alleged harms do not come close to meeting the demanding irreparable-harm standard. Additional detail on each point follows.

1. <u>FAU's long delay in seeking relief shows that its members do not face irreparable harm.</u>

When FAU sued Defendants-Appellees in May 2025—during the softball season—it declined to seek relief for that season even though one member was "likely" to face Doe at the state tournament in June. (App.092; R.Doc. 7, at 16.) Instead, FAU requested relief for the 2026 season, which was then a full year away. (Aples. App. 6; R.Doc. 25, at 1). This delay is "unreasonable" and defeats FAU's claim of irreparable harm. *Ng*, 64 F.4th at 997–99; *Hotchkiss*, 115 F.4th at 894.

"'[A] party requesting a preliminary injunction must generally show reasonable diligence.'" *Id.* (quoting *Benisek v. Lamone*, 585 U.S. 155, 159 (2018)). An "unreasonable delay" in seeking preliminary injunctive relief "can undermine a showing of irreparable harm and 'is a sufficient ground to deny a preliminary injunction.'" *Ng*, 64 F.4th at 997 (quoting *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019)). Whether a delay is

unreasonable depends on the facts of the case. *Id.* This Court has concluded that a delay is unreasonable "'if the harm has occurred and the parties cannot be returned to the status quo.'" *Id.* (quoting *McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1125 (8th Cir. 2015)).

FAU unreasonably delayed its pursuit of preliminary injunctive relief, as two recent and relevant cases show. In *Hotchkiss*, the school district issued a "no-trespass notice" against a father after he verbally threatened members of the school board. 115 F.4th at 891–92. Sixteen months after the district issued the notice, the father sued the school district, alleging retaliation under the First Amendment and related state law claims. *Id.* at 892. The father moved for a preliminary injunction to prevent the school district from enforcing the notice, and the district court denied the motion. *Id.* On appeal, this Court affirmed the district court's denial of preliminary injunctive relief for failure to show reasonable diligence. *Id.* at 894. This Court emphasized that the father's "lawsuit was filed sixteen months after [he] was served with the no-trespass notice," during which time the father "had moved his child to another school district, missed thirty-eight Board meetings, and failed to express his views in writing, as the notice permitted." *Id.* In view of this evidence, this Court concluded that "the district court did not abuse its discretion when it denied [the father's] motion" for failure to show irreparable harm, which was

"independently sufficient" to deny his request for a preliminary injunction. *Id.* (citation and quotation marks omitted).

This Court also upheld the district court's denial of preliminary injunctive relief in *Ng*, 64 F.4th at 998–99. There, a male gymnast challenged the University's decision to eliminate the men's gymnastics program, alleging sex discrimination under the Constitution and Title IX. *Id.* at 996. The gymnast also sought preliminary injunctive relief. *Id.* The district court denied the motion, and the gymnast appealed. *Id.* On review, this Court again upheld the district court's denial of injunctive relief on reasonable-diligence grounds. *Id.* at 998. The Court emphasized that the gymnastics team was disbanded more than a year before the gymnast filed suit, meaning most of the staff and athletes had left and making it unlikely that the team could have competed if an injunction issued. *Id.* Because the gymnast "sought an injunction after it would have been possible to preserve the status quo," the court held "that the delay was unreasonable and that it consequently defeated [the] goal of preventing irreparable harm." *Id.* (citation and quotation marks omitted).

FAU's delay is even more unreasonable than the delays in *Hotchkiss* and *Ng*. FAU waited years after its members began competing against Doe to sue Defendants-Appellees for their allegedly unlawful conduct. (App.323; R.Doc. 48-3, at ¶¶ 23, 26.) And when FAU finally did file suit during the 2025 season,

it deliberately chose not to seek relief for that season, even though it predicted that FAU members would face Doe at the state tournament. (App.092; R.Doc. 7, at 16.)

The reason for FAU's unusual delay became clear during preliminary injunction briefing: FAU filed suit in 2025 after President Trump issued executive orders concerning transgender student-athletes, and Minnesota's Attorney General responded with a legal opinion supporting inclusion. (*See* App.Br. at 22–23.) FAU openly admits this. (*Id.* at 24.)

But FAU's legal challenge targets an MSHSL bylaw adopted in 2015—a policy that FAU now claims "has violated Title IX since its inception." (*Id.* at 45.) FAU cannot have it both ways. It cannot argue that the MSHSL bylaw has been illegal since 2015 but did not start causing irreparable harm until 2025, after a conspicuous change in presidential policymaking. This contradiction exposes FAU's motion for what it is: an attempt to capitalize on a political moment, not a response to immediate, irreparable harm.

But politics do not dictate the Court's decision here—the law does. And the law shows that FAU's delay in seeking preliminary injunctive relief undermines its allegation of irreparable harm, supports the district court's denial of preliminary injunctive relief, and provides an independent basis for affirming the district court's preliminary injunction order. *Ng*, 64 F.4th at 997.

2. <u>The harms FAU members allegedly face are speculative and unsupported by the record.</u>

The district court expressly found that the harms alleged by FAU are not "injunction[ ] worthy." (App.797; Add.065; R.Doc. 134, at 65.) The district court's finding was premised on its close review of the record, which makes the district court's conclusion about the insufficiency of FAU's alleged harms a "material factual finding[]" subject to clear-error review. *Ng*, 64 F.4th at 997 (quoting *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 689–90 (8th Cir. 2003)).

There is no error in the district court's findings. The district court observed that even FAU acknowledges that its "members are not at risk of losing their ability to participate" on their high school softball teams. (App.796; Add.064; R.Doc. 134, at 64.) Instead, FAU alleges that its members *may* experience (1) a decreased likelihood of success, or (2) an increased likelihood of being injured if Doe is not prohibited from playing softball next year. Both harms rest on the assumption that Doe's softball team will play against FAU members' softball teams, which is far from certain. The district court correctly concluded that neither of these injuries necessitates a preliminary injunction.

*a. A decreased chance of winning is not irreparable harm.*

FAU argues that its members will suffer irreparable harm because they will be deprived of "an equal chance to excel and reach or win regional and state championship competition." (App. Br. at 50 (citation, quotation marks, and alterations omitted).) This argument fails for two independent reasons.

First, winning is not a right protected by Title IX. Title IX protects the right to participate in educational programs and activities. 20 U.S.C. § 1681(a). FAU's members already possess—and take advantage of—that right. Their schools field softball teams. FAU's members can try out for those teams. Whether they advance to or win the state tournament depends on how well they and their teammates play—not on whether Doe plays for a different school. Title IX does not guarantee tournament success; it guarantees the opportunity to compete.

FAU's cases actually underscore why it loses here. In *Portz v. St. Cloud State University*, the university eliminated the women's tennis team—preventing participation entirely. 196 F. Supp. 3d 963, 966 (D. Minn. 2016). In *McCormick ex rel. McCormick v. School District of Mamaroneck*, schools scheduled girls' soccer in the off-season when no tournaments occurred—preventing access to championship competitions. 370 F.3d 275, 280 (2d Cir. 2004). Both cases involved schools blocking their own students from fully participating in their sport.

Here, FAU's members participate fully. They play on their schools' teams during the regular season. They compete in sectional and state tournaments. The only "harm" FAU alleges is that its members might lose to a team with a talented player. That's competition, not discrimination.

Even if decreased chances of advancing to or winning a state tournament title were a cognizable injury, that alleged harm still would not justify the extraordinary remedy of preliminary injunctive relief. A slightly reduced chance of success is a paradigmatic example of harm that is possible, but not "*likely* in the absence of an injunction," *Winter*, 555 U.S. at 22 (emphasis in original); *see also Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (vacating in part preliminary injunction where movant's "showing of irreparable injury [was] speculative and minimal").

That FAU's alleged harm is speculative was conclusively proven by the results of the 2025 season. FAU repeatedly predicted its members would "likely compete against ███ at the state tournament." (App.092, 104, 113; R.Doc. 7, at 16, 20, 29.) FAU built its entire emergency motion around this supposed inevitability. (*See* Entry ID 5564959, at 9, 19) But the team with FAU members lost to ████████—a team with no transgender athletes—and did not face ███ at all. (*See* R.Doc. 75, at ¶ 23.)

This result vitiates FAU's theory. FAU's members did not lose because of Doe. Rather, they lost because another team without any transgender athletes on it played better softball. This is exactly what this case is about: FAU seeks to blame potential losses on Doe's participation rather than accept the ordinary uncertainties of competitive athletics. Such speculation cannot support a preliminary injunction. *See Sessler*, 990 F.3d at 1156 (harm "too speculative" when it depends on chain of contingencies).

FAU's 2026 season projections are even more speculative. For FAU's alleged harm to materialize, a significant number of contingent circumstances would need to occur. Doe and FAU's members would all have to decide to play softball, make their schools' varsity teams, and stay healthy enough to play throughout the season. Doe and FAU's members would need to be joined by a full slate of equally talented teammates. Doe's team and FAU member teams would need to win a lot of games against a lot of other good teams. Only then would FAU members potentially face and possibly lose to Doe in the 2026 sectionals or state tournament.

It is certainly "possib[le]" that this chain of contingencies could resolve such that FAU's members would face and lose to Doe in 2026, but there are many reasons to think that it is not at all "likely." *Winter*, 555 U.S. at 22. Recall that ▮▮▮▮ had *never* played in the state tournament until ▮▮▮▮, even though

Doe played for ██████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ (*See* App.339; R.Doc. 80, at ¶ 13; *see also* R.Doc. 75, at ¶ 24.) Also recall

that ███████████████████████████████████████████████████████

████████ many of whom are outstanding athletes who currently play college

sports. (*See* R.Doc. 76, at ¶ 16; R.Doc. 75, at ¶ 21.) Given these and other factors,

the potential harm that FAU foresees for the 2026 softball season is speculative

at best. This series of what-ifs is exactly the sort of chain of events that this

Court has recognized as "too speculative" to support a preliminary injunction.

*Sessler*, 990 F.3d at 1156.

> b. *FAU's alleged increased risk of injury is not based in fact or law.*

To the extent that FAU alleges that its members are more likely to be

physically injured if Doe is permitted to play for ██████ during the 2026 season,

this allegation fails to show irreparable harm for two reasons.

First, there is little evidence to support this assertion. *See Minn. Ass'n of*

*Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83–84 (8th Cir. 1995) (vacating

preliminary injunction when movant's "proof of causation [was] tenuous at

best," "vague," and "ha[d] too little detail to entitle it to much credit"). FAU bases

its apparent argument on the subjective experience of one of its members who

claims that, on one occasion, Doe hit her with a pitch and it hurt more than other

pitches because of Doe's "increased strength." (*See* App.104; R.Doc. 7, at 28.) To begin, it is not clear that Doe actually hit the FAU member with a pitch. (*See* App.340; R.Doc. 80, at ¶ 18 (there is no record of Doe hitting Athlete 3 with a pitch).) But even if she did, any hit would have occurred during a *club* game, not at an MSHSL-sponsored event, meaning that Title IX would not apply.

Second, and more importantly, the objective evidence establishes that being hit by a pitch from Doe would not hurt worse than being hit by any other pitch, because Doe does not throw harder than the starting pitchers on other good teams. For example, during the 2025 state tournament Doe was ████████ ████████████████████████████ (R.Doc. 75, at ¶ 11.) In comparison, the ██ ████████████████████████████████████████████████████████████████ (*Id.*) At least ████████████████████████████████████████████████ ████████████████████ (R.Doc. 76, at ¶ 21.) As Doe, her coach, her team, and her father all agree and explain, Doe is ██████████████████████████████ ████████████████████████████████████████████████[3] (R.Doc. 75,

---

[3] That Doe's ██████████████████████████████████████████████████████ ██████████████████████████████████████████ (*See generally* R.Doc. 79, at ¶¶ 12–15.) *See id.* ████████████████████████████████████████████████████████████ *See id.*

at ¶ 11; *see also* R.Doc. 76, at ¶ 21; R.Doc. 77, at ¶¶ 12, 15; App.340; R.Doc. 80, at ¶ 15.) FAU's claim that its members face an increased risk of physical injury from being hit by pitches thrown by Doe based on its members' subjective impressions "is tenuous as best." *See Minnesota Ass'n of Nurse Anesthetists*, 59 F.3d at 83.

Even if there were evidence to establish that being hit by a pitch thrown by Doe would hurt more than being hit by a pitch thrown by another elite pitcher (which there is not), that evidence *still* would not show irreparable harm. It is telling that FAU points to only one (alleged) instance in which an FAU member was hit by a pitch thrown by Doe, even though Doe and FAU's members have played softball against each other for many years. (*See generally* App. Br.; App.077; R.Doc. 7) And because the alleged hit happened during private club play (if it happened at all), no FAU member has alleged that she was hit (let alone injured) by a pitch thrown by Doe while she was playing for ▮▮▮▮. (*See* App.340; R.Doc. 80, at ¶ 18.) It is thus very unlikely that FAU's members would be hit and injured by a pitch thrown by Doe in the 2026 season. FAU's allegations to the contrary are the precise type of "mere speculation" that this Court has deemed insufficient to show irreparable harm. *Padda*, 37 F.4th at 1384–85; *see also, e.g.*, *Sessler*, 990 F.3d at 1156.

In sum, the district court did not abuse its discretion when it found that FAU failed to establish that it will suffer irreparable harm if a preliminary injunction is not entered.

**B.    The district court did not abuse its discretion by concluding that the balance of equities does not favor an injunction.**

The district court also found that the balance of harms and public interest "weigh against issuing the requested injunction." (App.797; Add.065; R.Doc. 134, at 65.) This Court reviews that finding for abuse of discretion. *Iowa Migrant Movement for Just.*, 157 F.4th at 929. The district court's finding is well-supported and reflects no abuse of discretion.

"The third and fourth factors for a preliminary injunction—harm to the opposing party and the public interest—merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC*, 78 F.4th at 1018 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). When "balancing the equities," courts must "weigh 'the threat of irreparable harm' shown by the movant against 'the injury that granting the injunction will inflict on other parties[.]'" *MPAY Inc. v. Erie Custom Comput. Applic'ns, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (quoting *Dataphase Sys.*, 640 F.2d at 113). A plaintiff's failure to establish that the balance tips in its favor is independently sufficient grounds for denying preliminary injunctive relief. *See Hill v. Xyquad, Inc.*, 939 F.2d 627,

630 (8th Cir. 1991) (dissolving a preliminary injunction because, even assuming the district court correctly analyzed the other three factors, it did "not appear that the court adequately balanced the harms").

The district court's determination that the balance of equities weighs against the issuance of an injunction turned on two conclusions. (App.797; Add.065; R.Doc. 134, at 65.) First, the district court noted that "[t]hough the absence of a preliminary injunction would not prevent FAU's members from playing softball next season, the presence of a preliminary injunction would prevent Doe from doing so." (App.797; Add.065; R.Doc. 134, at 65.) This is obviously correct. If a preliminary injunction is entered, Doe would not be able to play softball with her friends during her last year of high school eligibility. By contrast, if the district court's decision is affirmed, FAU's members will still be able to try out for and play on their high school softball teams. The district court did not abuse its discretion by concluding that the balance of these harms weighs against the entry of a preliminary injunction.

Second, the district court observed that "it is difficult to imagine how the public interest might be assessed without weighing the policy interests implicated by the challenged bylaw." (App.797; Add.065; R.Doc. 134, at 65.) This, too, is obviously correct. There are strong interests and viewpoints on both sides of the question of whether transgender students should be

permitted to play school sports, as evidenced by the fact that states like Minnesota and West Virginia have enacted diametrically opposed laws on this point. *Compare* Minn. Stat. § 363A.13 (prohibiting gender-identity discrimination, including discrimination based on transgender status), *with* W. Va. Code § 18-2-25d(b)(1), (c)(1)–(2) (requiring that school sports teams be separated by biological sex). This Court cannot opine on where the public interest lies without taking a position in this ongoing debate. And as the district court observed, "[a] federal court can't do that and remain faithful to Article III." (App.797; Add.065; R.Doc. 134, at 65.)

## CONCLUSION

The district court did not abuse its discretion when it declined to issue a preliminary injunction in this case. The district court's order should be affirmed.

Respectfully Submitted,

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**

Dated: January 5, 2026        *s/ Virginia R. McCalmont*
Virginia R. McCalmont (MN#0399496)
Caitlinrose H. Fisher (MN#0398358)
Rebecca Rogers (MN#0403827)
Capella Tower
225 South 6th Street, Suite 1500
Minneapolis, MN 55402
(612) 474-3300
vmccalmont@forsgrenfisher.com
cfisher@forsgrenfisher.com
rrogers@forsgrenfisher.com

*Counsel for Defendant-Appellee Independent School District No. 11*

Dated: January 5, 2026        *s/ Timothy A. Sullivan*

**RATWIK, ROSZAK & MALONEY, P.A.**
Timothy A. Sullivan (MN#391526)
Christian R. Shafer (MN#387947)
Lauren T. Kingsbeck (MN#403637)
444 Cedar St., Suite 2100
Saint Paul, MN 55101
(612) 339-0060
tas@ratwiklaw.com
crs@ratwiklaw.com
ltk@ratwiklaw.com

*Counsel for Appellee Independent School District No. 192*

Dated: January 5, 2026

*s/ Christopher R. Deubert*

**CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP**
Christopher R. Deubert, *pro hac vice*
(MA#569124)
800 Boylston St. Suite 1005
Boston, MA 02199
(617) 849-7880
cdeubert@constangy.com

*Counsel for Appellee Independent School
District No. 279*

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) in that, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 6,546 words. In addition, the motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Cambria font.

This motion complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses and no virus was detected.

Respectfully Submitted,

Dated: January 5, 2026     *s/ Virginia R. McCalmont*
            Virginia R. McCalmont

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2026, I caused the foregoing motion to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: January 5, 2025                    s/ *Virginia R. McCalmont*
                                          Virginia R. McCalmont