# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

FEMALE ATHLETES UNITED,
*Plaintiff-Appellant,*

v.

KEITH ELLISON, in his official capacity as Attorney General of Minnesota; REBECCA LUCERO, in her official capacity as Commissioner of the Minnesota Commission on Civil Rights; ERICH MARTENS, in his official capacity as Executive Director of the Minnesota State High School League; WILLIE JETT, in his official capacity as the Minnesota Commissioner of Education; INDEPENDENT SCHOOL DISTRICT NO. 11 SCHOOL BOARD; INDEPENDENT SCHOOL DISTRICT NO. 192 SCHOOL BOARD; AND INDEPENDENT SCHOOL DISTRICT NO. 279 SCHOOL BOARD,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Minnesota
Case No. 0:25-cv-02151-ECT-DLM

## REPLY BRIEF OF APPELLANT

John J. Bursch
Suzanne E. Beecher
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegal.org
sbeecher@adflegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org
hframpton@adflegal.org

Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
rgray@adflegal.org

Renee K. Carlson
Douglas G. Wardlow
TRUE NORTH LEGAL
525 Park Street, Suite 460
St. Paul, MN 55103
(612) 789-8811
rcarlson@truenorthlegalmn.org
dwardlow@truenorthlegal.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................. iii

Introduction ............................................................................ 1

Argument ................................................................................ 2

I. Defendants' preliminary arguments are incorrect. ......................... 2

    A. FAU has standing. ................................................................. 2

    B. The Court reviews legal questions de novo. ........................... 6

    C. Probability of success on the merits here means a fair chance of prevailing. ................................................ 6

    D. The Court can consider the federal government's findings. ................................................................. 10

II. Defendants' merits-related arguments are incorrect. ................... 11

    A. The claims sound in disparate treatment. ............................ 11

    B. The bylaws violate Title IX's text, athletic regulations, and contemporary agency guidance. ..................................... 16

    C. No state-law-preemption question is raised. ......................... 21

    D. Defendants had clear notice. ............................................... 23

III. Defendants' post-merits arguments are incorrect. ...................... 26

    A. FAU members face irreparable harm. ................................... 26

    B. The public interest and balance of harms favor FAU. .......... 30

    C. There is no reason to remand on the injunction's scope or bond determination. ......................................................... 32

Conclusion ............................................................................ 33

Certificate of Compliance ...................................................... 35

Certificate of Service ................................................................................ 36

# TABLE OF AUTHORITIES

## Cases

*A.J.T. ex rel. A.T. v. Osseo Area Schools, Independent School District No. 279,*
605 U.S. 335 (2025) ........................................................ 14, 15, 16

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ........................................................ 14

*American Farm Bureau Federation v. EPA,*
836 F.3d 963 (8th Cir. 2016) ........................................... 4, 5

*Balow v. Michigan State University,*
24 F.4th 1051 (6th Cir. 2022) .......................................... 23

*Berndsen v. North Dakota University System,*
7 F.4th 782 (8th Cir. 2021) ............................................. 20, 24

*Biediger v. Quinnipiac University,*
691 F.3d 85 (2d Cir. 2012) ............................................. 12, 13

*Bostock v. Clayton County,*
590 U.S. 644 (2020) ........................................................ 22

*Carney v. Adams,*
592 U.S. 53 (2020) .......................................................... 4

*Carson v. Simon,*
978 F.3d 1051 (8th Cir. 2020) .......................................... 6

*Connexus Energy v. Commissioner of Revenue,*
868 N.W.2d 234 (Minn. 2015) .......................................... 9

*Cooper v. USA Powerlifting,*
26 N.W.3d 604 (Minn. 2025) ........................................... 8, 9

*D.M. ex rel. Bao Xiong v. Minnesota State High School League,*
917 F.3d 994 (8th Cir. 2019) ........................................... 7, 9

*EEOC v. Dial Corp.,*
    469 F.3d 735 (8th Cir. 2006) ........................................................ 13

*Grandson v. University of Minnesota,*
    272 F.3d 568 (8th Cir. 2001) ........................................................ 16

*Hotchkiss v. Cedar Rapids Community School District,*
    115 F.4th 889 (8th Cir. 2024) ....................................................... 28

*Iowa v. Wright,*
    154 F.4th 918 (8th Cir. 2025) ......................................................... 3

*Jackson v. Birmingham Board of Education,*
    544 U.S. 167 (2005) ..................................................................... 23

*McNaught v. Nolen,*
    76 F.4th 764 (8th Cir. 2023) ........................................................... 3

*Mercer v. Duke University,*
    190 F.3d 643 (4th Cir. 1999) ........................................................ 18

*Minnesota Mining & Manufacturing Co. v. Meter ex rel. N.L.R.B.,*
    385 F.2d 265 (8th Cir. 1967) ........................................................ 30

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ..................................................................... 3, 4

*Ng v. Board of Regents of University of Minnesota,*
    64 F.4th 992 (8th Cir. 2023) ........................................................ 28

*Pederson v. Louisiana State University,*
    213 F.3d 858 (5th Cir. 2000) ........................................................ 20

*Portz v. St. Cloud State University,*
    16 F.4th 577 (8th Cir. 2021) ........................................................ 15

*Roe v. Critchfield,*
    137 F.4th 912 (9th Cir. 2025) ................................................. 24, 25

*Sleep Number Corp. v. Young,*
    33 F.4th 1012 (8th Cir. 2022) ...................................................... 28

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College,*
600 U.S. 181 (2023) ..........................................................13

*Tennessee v. Cardona,*
737 F. Supp. 3d 510 (E.D. Ky. 2024)..............................30

*Tennessee v. Department of Educucation,*
104 F.4th 577 (6th Cir. 2024)..........................................22

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) ..........................................................32

*United States v. Eagleboy,*
200 F.3d 1137 (8th Cir. 1999) .........................................10

*United States v. Lemicy,*
122 F.4th 298 (8th Cir. 2024).........................................17

*Williams v. York,*
891 F.3d 701 (8th Cir. 2018) .............................................6

*Wolfe v. Fayetteville, Arkansas School District,*
648 F.3d 860 (8th Cir. 2011) ..........................................13

**Statutes**

1993 Minn. Laws ch. 22 ..........................................................7

20 U.S.C. § 1681 ....................................................................17

34 C.F.R. § 106.41 ..................................................1, 2, 18, 19, 22

Educ. Amends. of 1974, Pub. L. No. 93-380, § 844, 88 Stat. 484
(1974)...................................................................................17

Minn. Stat. § 121A.04.............................................................12

Minn. Stat. § 363A.13..........................................................7, 8

Minn. Stat. § 363A.23......................................................7, 8, 21

Minn. Stat. § 363A.24................................................................8

## Other Authorities

*Letter of Findings (Notice of Violation)*, U.S. Dep'ts of Educ. & Health & Human Servs. (Sept. 30, 2025) .......................................2

## INTRODUCTION

Defendants have two choices under Title IX. For competitive or contact sports, they can either (1) exclude no student from a team based on sex, or (2) allow "separate teams for members of each sex." 34 C.F.R. § 106.41(a), (b). Defendants rejected the first option by creating separate teams for boys and girls. And they then violated the second by allowing males who identify as girls to play on girls' teams, breaking the promise of a "separate team" for members of the female sex. The result? A state champion girls' softball team achieving victory after a male player pitched every single one of the team's state-tournament innings.

That Title IX violation is not one of disparate impact. A disparate-impact claim alleges that a seemingly neutral practice harms a protected group more than others. Defendants engaged in disparate *treatment*: they wrote their policy to allow male athletes who identify as girls to compete in girls' sports. Tellingly, Defendants did not even advance a disparate-impact argument in the district court.

The federal government's investigation got it exactly right: when a Title IX recipient justifies male and female teams based on "biological difference" while "letting some men play on women's teams," that "dis-

criminat[es] on the basis of sex" and violates 34 C.F.R. § 106.41(b). *Letter of Findings (Notice of Violation)* at 17, U.S. Dep'ts of Educ. & Health & Human Servs. (Sept. 30, 2025), perma.cc/BBC6-VXN7. This Court should reverse and order entry of a preliminary injunction.

## ARGUMENT

Defendants throw lots of arguments against the wall—11 by FAU's count. Some are preliminary, some are merits related, and some are post-merits. None stick.

## I. Defendants' preliminary arguments are incorrect.

Defendants make four preliminary arguments: (A) FAU lacks standing, (B) FAU stated the wrong standard of review, (C) the likely-to-prevail standard applies, and (D) the Court should ignore the federal government's findings that Minnesota is violating Title IX.

### A. FAU has standing.

Start with standing. The district court rightly concluded that at least Athlete 1 has standing because her team is scheduled to play Athlete Doe's team now in April. App. 764–66; R. Doc. 134 at 32–34. Yet Defendants dispute injury in fact. On the one hand, they say the injury from having to play Doe is not imminent. State Br. 18–19. On the other,

they say there is no injury from having to play Doe. *Id*. at 19–20. Neither argument works.

First, FAU's members are subject to sex-discriminatory bylaws now, and there's a substantial risk they will have to play Doe this upcoming season. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Athlete 1's team is already scheduled to play Doe's in late April—as they do every year because they're in the same conference. Opening Br. 15. That creates a substantial risk of having to compete against Doe.

Defendants claim a scheduled game "is a very thin reed on which to rest standing." State Br. 19. Hardly. It is concrete evidence of a likelihood that Athlete 1 will play against Doe. Besides, any showing of an injury will do. *Iowa v. Wright*, 154 F.4th 918, 938–39 (8th Cir. 2025) ("Injury in fact necessary for standing need not be large; an identifiable trifle will suffice." (citation omitted)).

And Defendants' suggestions that something *unlikely* could happen before the scheduled game changes nothing. Standing is assessed when a case is filed. *McNaught v. Nolen*, 76 F.4th 764, 769 (8th Cir. 2023). If something changes later, the case could become moot. *Id.* But there was—and is—a *strong likelihood* that Athlete 1, a female, elite-

level starter, will have to compete against Doe, a male, elite-level starter. That's what happened last season, when both made their varsity teams, remained injury free, and played against each other. That history supports a substantial risk of future injury. *Murthy*, 603 U.S. at 59.

Likewise, for the other FAU members. Athletes 2, 3, and 4 are likely to play Doe's team this season as they compete for a state championship. Opening Br. 17, 20, 22. If FAU is right on the merits—which the Court assumes for standing purposes, *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016)—forcing female athletes to compete against Doe violates Title IX. And who is most harmed by that? Elite softball players on elite teams likely to play Doe's team as they pursue a championship—which Doe's team won last season with Doe pitching every inning. That exactly describes Athlete 2, 3, and 4.

Those athletes are "sufficiently differentiated" from the general population of Minnesota softball players affected by the bylaws. *Carney v. Adams*, 592 U.S. 53, 64 (2020). In fact, Athlete 4's team was already knocked out of the state tournament once by Doe's team. App. 418; R.

Doc. 116 ¶¶ 20–21. There's a substantial risk of the same thing happening again. To demand higher proof would be to demand certainty—not what Article III requires.

Second, Defendants say there's no harm in having to compete against Doe. That's a merits argument, not a standing one. *See Am. Farm*, 836 F.3d at 968 ("The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim." (citation omitted)). This Court "must 'assume that on the merits the plaintiffs would be successful in their claims.'" *Id.* (citation omitted). So for standing, the Court assumes that female athletes are harmed in having to compete against Doe in a female-only softball league.[1] And that harm of unfair and unsafe competition is plenty. *Cf. Carson v. Simon*, 978 F.3d 1051, 1058

---

[1] The merits analysis does not turn on how much FAU's members are disadvantaged by having to play Doe. That inquiry depends on whether female athletes are forced to compete against males in general. Otherwise, the bylaws' validity would change depending on how good the male players are. It could even require weighing the effects of individual players' hormone interventions, which the bylaws do not require— and which do not eliminate males' advantages anyway. App. 206–13, 439–40; R. Doc. 8-2 at 86–93; R. Doc. 117 at 14–15. Regardless, FAU's female athletes *are* disadvantaged by having to play against Doe. Opening Br. 14–23.

(8th Cir. 2020) (per curiam) ("inaccurate vote tally" alone gives candidates standing). FAU has standing.

### B.   The Court reviews legal questions de novo.

Next, Defendants argue that FAU stated the wrong standard of review. State Br. 21; Sch. Dists. Br. 9. Not so. FAU explained that the Court reviews a preliminary-injunction denial for an abuse of discretion. Opening Br. 28. That includes reviewing legal questions de novo. Indeed, "an error of law is necessarily an abuse of discretion." *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018) (citation modified). Since the only questions before the Court are legal, review is de novo.

Defendants say the questions here are not purely legal, citing a litany of record evidence. State Br. 21. But none of that evidence supports any factual determination by the district court that matters on appeal. Only the district court's understanding of the law is at issue.

### C.   Probability of success on the merits here means a fair chance of prevailing.

Turn to Defendants' argument that the likely-to-prevail standard applies, not the fair-chance-of-prevailing standard. State Br. 26. FAU wins under either. Still, the lower standard applies. FAU challenges the bylaws, which did not result from "presumptively reasoned democratic

processes." *D.M. ex rel. Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019).

Defendants argue otherwise. First, they incorrectly claim that the bylaws are required by the Minnesota Human Rights Act. State Br. 26–27; MSHSL Br. 6–7. The MHRA covered gender identity for 12 years before the League changed its bylaws. *See* 1993 Minn. Laws ch. 22, §§ 2, 15, 19. So the MHRA could not have caused the change.

As the district court pointed out, the MHRA contains an express exemption for single-sex athletic teams. App. 768; R. Doc. 134 at 36 n.13. Consistent with Minnesota's Title IX analogue, schools can operate "separate athletic teams and activities for members of each sex" and restrict membership "to participants of one sex"—"[n]otwithstanding any other provisions of this chapter or any law to the contrary." Minn. Stat. § 363A.23, subd. 2. The use of "each sex" and "one sex," combined with § 363A.13 separately listing "sex" and "gender identity" as protected classes, leaves little doubt that the exemption speaks in terms of just two sexes—the biological binary of male or female. That means the MHRA allows schools to operate exclusively male and female teams. At

a minimum, there is daylight between the MHRA and the bylaws. So the lower fair-chance-of-prevailing standard applies.

Defendants point to *Cooper v. USA Powerlifting*, 26 N.W.3d 604 (Minn. 2025). State Br. 27. As Defendants tell it, that case is analogous because the MHRA's public-accommodation provisions prohibit discrimination based on transgender status and have a similar exemption for athletic teams. *Id.* But the two exemptions aren't analogous. The one here says "[n]otwithstanding any other provisions of this chapter or any law to the contrary." Minn. Stat. § 363A.23, subd. 2. That includes the prohibition on gender-identity discrimination in § 363A.13. The exemption in *Cooper* states only that "[t]he provisions of section 363A.11 relating to sex, do not apply." Minn. Stat. § 363A.24, subd. 2.

That's why the district court in *Cooper* "concluded that 'the plain language of subdivision 2 only applies to claims relating to public accommodation discrimination relating to the protected status of sex and not to'" transgender status. 26 N.W.3d. at 621 (citation modified). The explicit modifier "relating to sex" explains why the appellant did not challenge the district court's interpretation on appeal and therefore why the Minnesota Supreme Court did not address it. *See id.* at 621 n.13. In

fact, that court declined to address "any of the other statutory exemptions to unfair discriminatory practices contained in Minn. Stat. §§ 363A.20–.26"—including § 363A.23. *Id.*

Second, Defendants try to distinguish *D.M.* MSHSL Br. 6. There, this Court applied the lower standard to a League-bylaw challenge because the bylaws implemented a state statute. *D.M.*, 917 F.3d at 1000. Defendants say the statute there was permissive, while the MHRA here is mandatory. MSHSL Br. 6. But § 363A.23 allows single-sex teams, and specific statutory terms control over general language. *Connexus Energy v. Comm'r of Rev.*, 868 N.W.2d 234, 242 (Minn. 2015).

Third, Defendants argue that even if FAU is not challenging the MHRA, the League bylaws warrant the heightened standard because they implement the MHRA. MSHSL Br. 7. But the bylaws don't do that. The League did not have to allow males in female-only sports under the MHRA. It chose to do that without any "presumptively reasoned democratic processes." *D.M.*, 917 F.3d at 1000.

Fourth, Defendants say that this case concerns more than just the bylaws because FAU asked the district court to enjoin Defendants from applying Minnesota law. State Br. 28. But Defendants cut off the quote.

FAU asked for an injunction precluding "Defendants from applying or enforcing Minnesota law to require allowing male athletes to compete with or against" FAU's female-athlete members. App. 64; R. Doc. 1 at 43. The request was to prohibit Defendants from (wrongly) construing Minnesota law to support the bylaws' forcing FAU members to compete against males. That does not mean Minnesota law—rightly interpreted—requires it. Nor does it mean that if the bylaws are unenforceable, Minnesota law is too.

### D. The Court can consider the federal government's findings.

Last in the preliminary round, Defendants ask the Court to ignore the federal government's findings that Minnesota is violating Title IX. They argue that the findings are outside the record and not subject to judicial notice. State Br. 23. Out of an abundance of caution, FAU filed a motion to supplement the appeal record. Mot., Dec. 22, 2025. But the findings *are* subject to judicial notice. *See, e.g.*, *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999). The existence of the findings as accurately reflecting the federal government's position is not in dispute. *See* State Br. 25 n.11. And the findings remain persuasive authority that the Court should consider.

## II.     Defendants' merits-related arguments are incorrect.

Defendants make four merits arguments: (A) Title IX is irrelevant because FAU supposedly raises disparate-impact claims, (B) allowing males to play on female-only teams does not fail to accommodate or treat females unequally, (C) ruling for FAU raises preemption questions, and (D) Defendants lacked clear notice of what Title IX prohibits.

### A.     The claims sound in disparate treatment.

Defendants' big-ticket argument is that FAU's claims are for disparate impact, which Title IX does not allow. State Br. 28. Under that theory, any seemingly facially-neutral-sounding policy is immune from Title IX. Consider an example. A school creates separate male and female teams but allows any athlete who fails to make his or her team try out for the opposite-sex team. That's a neutral-sounding rule. But male athletes would displace female athletes left and right. Yet under Defendants' theory, female athletes would have no Title IX claim because the policy sounds facially neutral. Neither would the federal government. So Title IX would have no bearing on policies that effectively wipe out female sports.

That can't be right. Such claims challenge disparate treatment. The school in the hypothetical makes a conscious, sex-based decision no

different than a school choosing "to provide students with athletic participation opportunities through separate sports programs." *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 97–98 (2d Cir. 2012).

Likewise here, the League made a conscious, sex-based decision to allow male athletes to join female-designated teams by identifying as female. For starters, the bylaws operate within an already sex-separated sports league. The League policy is to have female-only softball *and* to allow athletes to participate based on gender identity. The starting point is already sex conscious. So tinkering with that sex-conscious choice remains sex conscious. Defendant's only response is a footnote saying that the "policy allows all students to participate consistent with their gender identity or expression in athletics and fine arts." State Br. 31 n.12. But unlike fine arts, which do not exclude anyone based on sex, athletics are already sex conscience under the bylaws and League policy. For athletics, the policy modifies the already sex-conscious decision of sex-separate teams.

In addition, the League already allowed female athletes to try out for the male teams. *See* Minn. Stat. § 121A.04, subd. 3(d). So the by-

laws' change didn't affect male teams at all: the only change was to disadvantage female teams and female athletes. That difference in treatment is more than enough to infer "discriminatory intent." *EEOC v. Dial Corp.*, 469 F.3d 735, 741 (8th Cir. 2006). Defendants knew the bylaws' change would affect only female teams; they did it anyway. That's intentional discrimination. To argue otherwise "is to deny reality." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 303–04 (2023) (Gorsuch, J., concurring) (schools need not "say the quiet part aloud" for intentional discrimination).

Defendants never contest that the only operative change was to female teams. Instead, they argue that FAU had to show additional "sex-based motivation." State Br. 32 (quoting *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 865 (8th Cir. 2011)). But *Wolfe* simply made the unremarkable point that harassment under Title IX must be on the basis of sex. 648 F.3d at 867. So in the harassment context, there must be sex-based motivation—otherwise the conduct is not on the basis of sex. But in the athletic context, a decision treating the sexes differently necessarily is on the basis of sex. *See, e.g.*, *Biediger*, 691 F.3d at 97–98. No additional showing of "ill will or animosity" is needed. *A.J.T. ex rel.*

*A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025).

Next, Defendants rely on *Alexander v. Sandoval*, 532 U.S. 275 (2001). State Br. 28–30. But because FAU's claims sound in disparate treatment, not disparate impact, *Sandoval* has no bearing here. Still, Defendants say other courts have agreed with the district court's application of *Sandoval* to Title IX. *Id.* at 30. Yet no case that either Defendants or the district court cited refused to apply Title IX's athletic regulations based on a theory that a claim was for disparate impact. That's where the district court stands alone.

Similarly, Defendants argue that *Sandoval* rejected that regulations could create a private cause of action. *Id.* That argument matters only if the claims here are for disparate impact. They're not. And *Sandoval* did not address the unique context of Title IX's athletic regulations: Congress uniquely mandated, reviewed, and allowed those regulations to go into effect. So their rights-creating language matters, and the situation is unlike § 602 of Title VI—what *Sandoval* considered.

Defendants also highlight language in the complaint that they think shows the claims are for disparate impact. *Id.* at 32. But numerous allegations in the complaint and other pleadings allege disparate treatment. *E.g.*, App. 60; R. Doc. 1 ¶ 181 (League chose to open "up girls' teams to male participation despite males' marked physiological advantages"); App. 101; R. Doc. 7 at 17 (arguing that "the law prohibits 'differential treatment'" (citation omitted)). And what Defendants point to just as easily supports a deliberate-indifference inference, which falls under disparate treatment. *A.J.T.*, 605 U.S. at 344–45.

Defendants then say that not all claims involving the athletic regulations involve disparate treatment. State Br. 32. But they cite no cases in which courts rejected claims under the regulations as sounding in disparate impact. Besides, what matters are *these* claims. And they sound in disparate treatment because the League made a sex-based choice to allow males on exclusively female teams. That's no different than the conscious choice to eliminate a girls' athletic team altogether. *E.g.*, *Portz v. St. Cloud State Univ.*, 16 F.4th 577, 579 (8th Cir. 2021).

Finally, Defendants say the claims here cannot show deliberate indifference because there's no evidence of female athletes complaining

and receiving a League response. State Br. 34–35. But the League knew that changing the bylaws affected only female teams. It knew about males' competitive advantage. And it was told by the federal government that the bylaws violated Title IX. Yet it still "disregarded a 'strong likelihood' that" its bylaws violated "federally protected rights." *A.J.T.*, 605 U.S. at 345 (citation omitted). That's deliberate indifference. Defendants' citation to *Grandson v. University of Minnesota*, 272 F.3d 568 (8th Cir. 2001), cannot change that. The heightened-notice standard there applied to damages claims, which are not at issue here. *Id.* at 576. And the "vigorous public debate" there did not include Title IX's enforcement agencies telling a state it's out of compliance. *Id.* at 575. FAU's Title IX claims are actionable.

## B. The bylaws violate Title IX's text, athletic regulations, and contemporary agency guidance.

Under any metric—text, regulations, or agency guidance—the League's bylaws violate Title IX.

Defendants don't address FAU's textual argument. Before this Court, they waive any argument that "sex" in Title IX includes gender identity. State Br. 36 n.13. Preserving an argument only for "further review" and "other litigation," *id.*, but not making it now is an intentional

relinquishment, s*ee United States v. Lemicy*, 122 F.4th 298, 308 (8th Cir. 2024). And from that concession, the textual analysis is easy.

The change from female-only sports to allowing some males in otherwise female-only sports takes away the "benefit[]" of female-only sports. 20 U.S.C. § 1681(a). It excludes some females' "participation in" those sports because males take female athletes' roster spots. *Id.* And it subjects those female athletes "to discrimination" because they are denied fair and safe competition, while male athletes aren't. *Id.* Females are treated less favorably than similarly situated males. That's classic sex discrimination.

Or take a different tack. The Javits Amendment makes clear that "the nature of particular sports" matters. Educ. Amends. of 1974, Pub. L. No. 93-380, § 844, 88 Stat. 484, 612 (1974). That necessarily implies Congress recognized that males and females are different when it comes to particular sports—because of males' widely known competitive advantages. So for some sports, in order not to exclude females "from participation in," deny them "the benefits of," or subject them "to discrimination," a school *must* offer them some kind of protection. 20 U.S.C. § 1681(a). One way to do that is to have female-only teams competing

against female-only teams. That's exactly what the League did initially. But then it allowed males who identify as girls to play on female-only teams. That did away with its chosen accommodation. And without that accommodation, the bylaws violate Title IX's text.

Defendants skip over the statutory text and jump to Title IX's athletic regulations. State Br. 36. They fare no better there. Defendants never explain how the bylaws fit under either 34 C.F.R. § 106.41(a), requiring no sex separation when sex doesn't matter, or the exception in § 106.41(b), allowing sex-separate teams when sex does matter—in contact or competitive sports.

Under § 106.41(a), softball is not co-ed: males who identify as male are excluded. And under § 106.41(b), softball is no longer female-only: males who identify as girls can participate. That's the end of the analysis. "Once an institution has allowed a member of one sex to try out for a team operated by the institution for the other sex in a contact sport, subsection (b) is simply no longer applicable, and the institution is subject to the general anti-discrimination provision of subsection (a)." *Mercer v. Duke Univ.*, 190 F.3d 643, 648 (4th Cir. 1999).

Though Defendants' violation of § 106.41(a) and their inability to qualify for the safe-harbor in § 106.41(b) alone mean there's a Title IX violation, Defendants also violate § 106.41(c). Females are not offered equal athletic opportunity. Males are guaranteed fair and safe competition while females aren't.

Responding to those regulation-based arguments, Defendants say that the default rule is co-ed sports. State Br. 38. Yet they never explain how they fall under the default rule.

Defendants also argue that FAU doesn't sufficiently engage with the factors listed in § 106.41(c). *Id.* at 38–39. But the regulation is clear that determining equal opportunity considers the factors listed "among other factors," 34 C.F.R. § 106.41(c), and the fact that the bylaws allow *some* males to compete in girls' sports is dispositive. Besides, FAU *did* engage with the factors. For example, it applied the Selection of Sports section of the 1979 policy interpretation. Opening Br. 46–47. FAU explained how each factor was met: female opportunities have been limited historically; females have sufficient interest and ability to field a team; and females lack the skill to make or compete on a single-sex

team. *Id.* So the League had to provide a female-only equivalent to boys' baseball but failed to do so.

Resisting that, Defendants say baseball and softball are not the same sport. State Br. 38 n.15. But they are equivalent or comparable—which is what matters. *E.g.*, *Pederson v. La. State Univ.*, 213 F.3d 858, 878–79 (5th Cir. 2000) (men's baseball comparable to fast-pitch softball under Title IX). Likewise, Defendants fail to respond to the 1975 guidance letter's requirement that the League offer an all-female equivalent to men's baseball. Opening Br. 46.

Instead, Defendants argue that FAU did not prove the other parts of the 1979 policy interpretation. State Br. 38–39. But the non-contact sports definition of what effective accommodation means "squarely answers the question of how separate [non-]contact sports teams effectively accommodate students." *Berndsen v. N.D. Univ. Sys.*, 7 F.4th 782, 789 (8th Cir. 2021). *Berndsen* is clear on that. And Defendants have no answer to FAU's showing that each factor is met. The bylaws violate Title IX.

### C. No state-law-preemption question is raised.

Next, Defendants argue that they likely win on the merits because Title IX doesn't preempt state law or otherwise prohibit males from playing on female-only teams. State Br. 40. But their varied arguments there all miss the mark.

First, Defendants say if the Court rules for FAU, Title IX would preempt the MHRA. That's wrong. As discussed, the MHRA has an exception for single-sex athletic teams. Minn. Stat. § 363A.23, subd. 2. So ruling for FAU does not mean Title IX preempts the MHRA. Defendants' preemption argument is thus misplaced. *See* State Br. 42.

Of course, if Minnesota amended the MHRA to prohibit female-only teams, the statute would conflict with Title IX. Then there would be impossibility preemption, and Title IX would prevail. Defendants would be held to their bargain in accepting federal funds. They can't take Title IX dollars and then violate Title IX's requirements. Defendants' efforts to mesh their reading of the MHRA with Title IX cannot change that. *See* MSHSL Br. 11–16.

Second, Defendants say Title IX does not prevent males who identify as female from playing on female-only teams because "sex" *could* include gender identity. State Br. 41. But Defendants already waived that argument. *Id.* at 36 n.13. And FAU explained in detail why "sex" in Title IX is the biological binary of male or female, as nine Supreme Court Justices have agreed. Opening Br. 36–39. Defendants have no response.

Third, Defendants argue that even if "sex" excludes gender identity, males identifying as female could still play in female-only sports, pointing to *Bostock v. Clayton County*, 590 U.S. 644 (2020). State Br. 41. But Defendants offer nothing to rebut FAU's argument that *Bostock* doesn't apply to Title IX. Opening Br. 40–41.

Fourth, Defendants point out that 34 C.F.R. § 106.41(b) is permissive. No doubt. But if a Title IX recipient eschews that option, it must satisfy the general rule of § 106.41(a), and Defendants do not. Plus, they don't comply with the overarching requirement of § 106.41(c).

*Tennessee v. Department of Educucation*, 104 F.4th 577 (6th Cir. 2024), does not suggest otherwise. It did not address a policy falling outside § 106.41(b)'s safe-harbor or violating the equal-opportunity man-

date in Title IX's text and § 106.41(c). Indeed, *Tennessee* did not over-rule prior Sixth Circuit cases *requiring* schools to provide equal opportunities to women in athletics. *E.g.*, *Balow v. Mich. State Univ.*, 24 F.4th 1051, 1054 (6th Cir. 2022) (vacating preliminary-injunction denial for challenge to elimination of female-swim teams). Defendants' various preemption arguments all fail.

### D.   Defendants had clear notice.

Defendants make one more merits-related argument: that they lacked clear notice. State Br. 43. The argument is a nonstarter. The Supreme Court's decision in *Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005), and this Court's decision in *Berndsen* make short work of it. In *Jackson*, the Supreme Court explained how there was clear notice that Title IX prohibits retaliation despite that concept not being spelled out in the statute. 544 U.S. at 181–84. As the Court emphasized, it has "consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination." *Id.* at 183. And the "regulations implementing Title IX clearly prohibit retaliation and have been on the books for nearly 30 years." *Id.*

The same reasoning applies here. The League's discrimination readily fits the other diverse forms of discrimination that Title IX prohibits. And the athletic regulations, guidance letter, and policy interpretation have been on the books for nearly 50 years. Indeed, the 1979 policy interpretation is clear that there are circumstances in which female-only teams are required. That's why there was no suggestion in *Berndsen* that the school lacked notice of its obligation to field a women's hockey team, 7 F.4th at 789, even though Title IX's text says nothing about that. Put differently, if Defendants are right, *Berndsen* was wrong. Worse, the regulations and contemporary agency guidance would be all but unenforceable.

Yet Defendants push back. First, they argue that guidance from presidential administrations has changed. State Br. 44. But none of the *controlling authority* changed: Title IX's text, athletic regulations, and contemporary agency guidance remain the same. Those authorities are all that Defendants rely on for their substantive arguments.

Second, Defendants point to *Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025). But *Critchfield* doesn't help. There, Idaho followed 34 C.F.R. § 106.33—an original Title IX regulation—by assigning restrooms based

on sex. The plaintiffs said that violated Title IX. But the Ninth Circuit held that even if the plaintiffs were right (without holding so), Idaho lacked clear notice. *Id.* at 929. Its reason was simple: Idaho was following longstanding regulations that "authorized schools to maintain sex-segregated facilities" and contemporary dictionaries defined "sex" as that "assigned at birth." *Id.* So to upend that status quo, Title IX would have had to unambiguously prohibit excluding "transgender students from restrooms" and the like. *Id.*

Here, the contemporary definitions of "sex" are biological sex, and the regulations and contemporary agency guidance make clear that female-only teams are required in some circumstances, including here. Put differently, states have been on notice of the biological definition of sex and the athletic requirements that spring from it—the same is not true of efforts to redefine sex and rework athletics based on recent concepts of gender identity.

Third, Defendants argue that the cost of complying would be substantial. State Br. 45. That's baseless. There is a ready-made, low-cost option: use the League's physical form recording biological sex. All the League would have to do is provide that form to its schools for them to

verify an athlete's biological sex. Whether the League already requires school districts to use that form or provides them the whole form, *see* MSHSL Br. 14 n.1, any associated costs are minimal.

## III. Defendants' post-merits arguments are incorrect.

Finally, Defendants make three post-merits arguments: (A) there is no irreparable harm, (B) the equities and public interest don't favor ensuring safe and fair sports for females, and (C) the Court should remand on the injunction's scope and bond determination.

### A. FAU members face irreparable harm.

Defendants spill a lot of ink trying to show FAU's members don't face irreparable harm. State Br. 45–49; Sch. Dists. Br. 12–26. But Defendants' arguments all assume they're right on the merits. If FAU is right that forcing its members to play softball against males violates Title IX, the harm from having to compete against Doe this upcoming season is irreparable. As soon as a female athlete is forced to play Doe's team, she is deprived of fair and safe competition. And that harm is irreparable because there are no do-overs in sports. The female athletes who struck out and lost to Doe last season will never get back the chance to play a fair game or have a fair season.

Defendants never directly contend with that argument. And nothing they point to changes it. First, Defendants say that the bylaws do not prevent FAU's members from playing softball. State Br. 46. But that's not the harm FAU's members assert, and Defendants fail to explain how forcing the members to compete in unfair and unsafe games isn't irreparable. For Defendants, no matter how unequal females' opportunities are, if they can step on the field, there's no problem. That's alarming.

Second, Defendants suggest that "losing a game" is not irreparable. *Id.* at 47. But they never explain why not. There's no rewinding the clock. No amount of damages can make FAU's athletes whole by affording them the same fair and safe competition that male athletes enjoy. Not even reassigning wins or titles can do that.

Third, Defendants argue that the harm from playing Doe is too speculative because only one member is currently scheduled to do so. *Id.*; Sch. Dists. Br. 22. That's Defendants' standing argument repackaged. Irreparable harm does not require "certainty," just that "irreparable injury is likely in the absence of an injunction." *Sleep No. Corp. v.*

*Young*, 33 F.4th 1012, 1018 (8th Cir. 2022) (citation omitted). And FAU's members are likely to play Doe, as discussed.

Fourth, Defendants claim that FAU delayed in seeking a preliminary injunction, waiting nearly a decade to challenge the bylaws. State Br. 47. But FAU could not have challenged the bylaws a decade ago. FAU did not exist then. Its members were not playing softball in the League. And they lacked knowledge that a male athlete was competing against FAU members and other girls, and was likely to continue playing against those members—facts establishing their standing. *E.g.*, App. 322–23; R. Doc. 48-3 ¶¶ 18–28.

Besides, the timeline effectively reset when the League reaffirmed its bylaws despite clarification from the current administration on Title IX's meaning. FAU sued less than two weeks after one of its members was harmed by that decision—Athlete 1's team lost to Doe's team. App. 26, 53; R. Doc. 1 ¶¶ 20, 148. The next day, FAU asked for a preliminary injunction. App. 71; R. Doc. 6. Those facts readily distinguish this case from *Hotchkiss v. Cedar Rapids Community School District*, 115 F.4th 889 (8th Cir. 2024), or *Ng v. Board of Regents of University of Minnesota*, 64 F.4th 992 (8th Cir. 2023).

In the same vein, Defendants argue that FAU delayed during litigation. State Br. 48; Sch. Dists. Br. 15–18. For starters, they say there's no irreparable harm now because FAU supposedly did not seek a preliminary injunction for the 2025 state tournament when a member was set to play Doe's teams two weeks later. Sch. Dists. Br. 15. But FAU *did* seek injunctive relief for the 2025 season. App. 74; R. Doc. 6. It was only after the district court set the schedule for the preliminary-injunction hearing—which made injunctive relief for the 2025 season impossible— that FAU pivoted to focus on the 2026 season. R. Docs. 36, 37.

Defendants also suggest that FAU delayed by not agreeing to merge the preliminary-injunction determination with a trial on the merits. State Br. 48. But Defendants cannot dictate FAU's litigation strategy. Merging a preliminary injunction with a merits trial could easily have resulted in delay, precluding a ruling from the district court before the 2026 season—let alone review in this Court. Similarly, Defendants argue that FAU seeking an injunction pending appeal somehow shows it delayed. State Br. 48. But that shows the opposite: FAU sought immediate relief.

Fifth, Defendants say that granting a preliminary injunction would upend the status quo. Sch. Dists. Br. 11. But the status quo is the state of affairs that existed *before* the League violated Title IX's text and athletic regulations. *Minn. Mining & Mfg. Co. v. Meter ex rel. N.L.R.B.*, 385 F.2d 265, 273 (8th Cir. 1967) (status quo is last uncontested status preceding litigation). That text and those regulations "have been unchanged for approximately 50 years." *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 569 (E.D. Ky. 2024). And they established sex-designated sports as the equal-opportunity benchmark for decades. That is the relevant status quo.

## B. The public interest and balance of harms favor FAU.

Defendants argue that the public interest and balance of harm favor them. State Br. 49–50; Sch. Dists. Br. 26–28. But the public interest lies in correctly applying Title IX and holding Defendants to their end of the bargain in receiving federal funds. Defendants' contrary arguments fail.

First, Defendants downplay FAU's members' harm, reducing it to nothing more than less athletic success. State Br. 49. That's wrong. The

harm is being discriminated against, being denied fair and safe competition, and losing out on opportunities for state titles, recognitions, and college scholarships. That harm is significant.

Second, Defendants point to alleged harm to Athlete Doe from an injunction. *Id.*; Sch. Dists. Br. 27. But an injunction would not prevent Doe from playing softball. It would bar Doe only from competing "with, or against, FAU members in female-designated contact or competitive sports." Opening Br. 52. And under Title IX and its regulations, a male athlete has no right to play on a female-only softball team.

Third, Defendants argue that an injunction would disrupt MHRA's enforcement. State Br. 50. But as discussed, the MHRA rightly interpreted does not conflict with Title IX's requirements here.

Fourth, Defendants suggest that it is too difficult to weigh the competing views in the public debate about males in girls' sports. Sch. Dists. Br. 28. But Congress has already done that, establishing that once a Title IX recipient elects to have male and female teams, a male is not allowed to compete in female athletic events. All the Court need do is apply Congress's policy decision in Title IX.

### C.     There is no reason to remand on the injunction's scope or bond determination.

Defendants make two final arguments. They say the Court should remand for the district court to consider the injunction's scope and whether to issue a bond. They are wrong on both points.

First, Defendants argue that FAU's requested injunction is too broad. State Br. 51–52. But FAU asks only for an injunction barring "Defendants from allowing males to compete with, or against, FAU members in female-designated contact or competitive sports"—nothing more. Opening Br. 52. It does not ask for an injunction prohibiting Doe or other males from competing in female-only sports generally. It asks only for "complete relief" for the plaintiff "*before the court.*" *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). And that plaintiff is FAU—not its individual members. Limiting an injunction to "identified games between the four FAU members and Doe" would not provide FAU complete relief. State Br. 52. Defendants conflate the injury in fact needed to show standing with the harm from the bylaws' Title IX violation.

Second, Defendants argue that FAU should provide a bond. *Id.* They suggest that enforcing the injunction would require expensive "confirmatory sex testing." *Id.* But all Defendants need do—and all FAU

asks for—is use the League's existing physical form for athletes to mark their biological sex. That's why the injunction "imposes no meaningful costs." Opening Br. 51. Defendants are trying to create a mountain out of a molehill to impose an exorbitant bond on a non-profit seeking an injunction that is in the public interest. And the only apparent purpose is so that males identifying as girls can continue to compete in women's athletic events. That is no cause to remand.

## CONCLUSION

Female athletes deserve a fair and safe playing field just like male athletes. Title IX demands nothing less. The Court should reverse and order entry of a preliminary injunction.


Dated: January 8, 2026

Respectfully submitted,

*/s/ Rory T. Gray*

John J. Bursch
Suzanne E. Beecher
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegal.org
sbeecher@adflegal.org

Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
rgray@adflegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org
hframpton@adflegal.org

Renee K. Carlson
Douglas G. Wardlow
TRUE NORTH LEGAL
525 Park Street, Suite 460
St. Paul, MN 55103
(612) 789-8811
rcarlson@truenorthlegalmn.org
dwardlow@truenorthlegal.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 6,402 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Office 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

This brief has been scanned for viruses with the most recent version of a commercial virus scanning program, Cortex XDR, Agent version 7.8.1, and according to the program is free of viruses.

Dated: January 8, 2026

*s/Rory T. Gray*
Rory T. Gray
*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/Rory T. Gray*
Rory T. Gray
*Counsel for Appellant*